**TELEVISION INDUSTRIES, INC.,
Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 10, Docket 26144.**

United States Court of Appeals
Second Circuit.

Argued Oct. 14, 1960.

Decided Nov. 14, 1960.

Henry W. de Kosmian, of Cravath, Swaine & Moore, New York City (George S. Parlin, Jr. and Edward P. Tolley, Jr., of Cravath, Swaine & Moore, New York City, on the brief), for petitioner.

L. W. Post, of the Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks and Robert N. Anderson, Attorneys, of Department of Justice, Washington, D. C., on the brief), for respondent.

Before CLARK, MAGRUDER and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

This is a petition by a taxpayer to review a decision of the Tax Court, 32 T.C. 1297, finding petitioner liable as transferee for a deficiency of $77,199.53, together with interest, in the income tax of National Phoenix Industries, Inc., hereafter "Phoenix." This finding stems from a conclusion that $1,026,285 received by Phoenix from Nedick's, Inc. on November 15, 1951, and not reported as income, was taxable to Phoenix as a dividend under § 115(g) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 115 (g). The facts, which are not disputed, are set forth at length in the opinion of the Tax Court. We shall state only such as we deem essential for understanding the problem presented.

In May, 1951, 900 shares of the stock of Nedick's, Inc. were owned by the Estate of Maurice Wertheim and his associates, hereafter "the Wertheim interests." These shares constituted 90% of the outstanding stock; the other 100 shares were owned by employees from whom Nedick's was entitled to purchase. At a meeting of the board of directors of Phoenix on May 14, 1951, the chairman narrated negotiations he had been conducting for the purchase of the stock of the Wertheim interests for $3,600,000, payable $200,000 on signing the contract, $500,000 60 days thereafter, and $2,-900,000 six months later. In discussing the financing of the proposed purchase, he stated his opinion "that at least $1,000,000 would be available in Nedick's, Inc. itself to be applied toward the purchase price." He also expressed the view that "Nedick's, Inc., had great opportunity for improvement and expansion. * * * "

Pursuant to authority given by its directors, Phoenix entered into a purchase agreement with the Wertheim interests on May 21, 1951, substantially as indicated by the chairman at the directors' meeting. The first two installments of the purchase price were paid. On August 2, 1951, Nedick's purchased 50 shares of stock owned by its then president, pursuant to its option; the remaining 50 shares were purchased, also pursuant to option, on December 14, 1951.

On November 7, the chairman of Phoenix was authorized by its directors to obtain a clearance loan of $1,000,000 from a bank for use in .making the final payment. The minutes recite that the chairman "pointed out that Nedick's, Inc. had cash available which, if used by it to purchase a portion of the shares so acquired by the Corporation, would thereby be made available to the Corporation to repay such loan." On November 15, Phoenix borrowed $1,000,000. It paid the final installment of the purchase price, which had been reduced to $2,845,000, with these funds and its own, received delivery of the 900 shares from the escrow agent, and immediately offered to sell Nedick's, Inc. 260 shares for $1,-026,285, this being the purchase price of these shares plus an appropriate proportion of the expenses of the entire purchase. Nedick's forthwith accepted Phoenix's offer and paid for the 260 shares. Phoenix used $1,000,000 of the proceeds to pay off the clearance loan.

In its 1951 Federal income tax return, Phoenix reported the sale of the 260 shares to Nedick's as having been without gain or loss. The Commissioner asserted that the payment by Nedick's was a dividend to Phoenix under § 115(g) of the Internal Revenue Code of 1939, which provides that

"If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings;or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

The Tax Court has upheld the Commissioner's determination.

■ If attention may properly be limited to the transaction between Phoenix and Nedick's on November 15, 1951, the Commissioner was quite clearly warranted in concluding that the payment was within the statute, even without the gloss provided by Treasury Regulations 118, § 39.115(g)1(a) (2):

"* * * A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913."

Phoenix was the owner of all the outstanding stock of Nedick's, save for the 50 shares which Nedick's had under option and acquired only a month thereafter; hence the payment was in effect pro rata. It had "the same effect" as a dividend of the same amount, see Northup v. United States, 2 Cir., 1957, 240 F. 2d 304, 306, and the reference to the legislative history in footnote 2. There was no evidence that the payment was incident to a contraction of Nedick's business. It is immaterial that the 260 shares were held for some time in Nedick's treasury. Wilson v. United States, 2 Cir., 1958, 257 F.2d 534, certiorari denied 358 U.S. 893, 79 S.Ct. 155, 3 L. Ed.2d 121.

■ Petitioner contends that this is too much a key-hole view. It says that the transaction had precisely the same effect as if the Wertheim interests had sold 260 shares to Nedick's for $1,026,285 and had sold petitioner 640 shares for $2,518,715, and that if the transaction

had been cast in that form, the payment to the Wertheim interests would not have been taxable under § 115(g), Zenz v. Quinlivan, 6 Cir., 1954, 213 F.2d 914, now followed by the Commissioner, Rev. Ruling 54–458, 1954–2 C.B. 167, and there would have been no payment to Phoenix to be taxed. We find little persuasiveness in the argument stated in that form. The Commissioner is justified in determining the tax effect of transactions on the basis in which taxpayers have molded them, Gray v. Powell, 1941, 314 U.S. 402, 414, 62 S.Ct. 326, 86 L.Ed. 301; Interlochen Co. v. C. I. R., 4 Cir., 1956, 232 F.2d 873, 877, although he may not always be required to do so, Higgins v. Smith, 1940, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406. It would be quite intolerable to pyramid the existing complexities of tax law by a rule that the tax shall be that resulting from the form of transaction taxpayers have chosen or from any other form they might have chosen, whichever is less.

Petitioner is on stronger ground, although not strong enough, when it urges that, taking the transaction as it was, the Commissioner was still not warranted in finding that the distribution was "essentially equivalent to the distribution of a taxable dividend." Petitioner says that Phoenix started on November 15, 1951 owning no stock in Nedick's and ended owning 640 shares which had cost it $2,518,715 plus expenses, and that to seize on Phoenix's momentary ownership of 260 shares is to atomize the transaction and to put form above substance. The Commissioner responds that it is the taxpayer that is atomizing the transaction by seeking to obliterate the significant step wherein a corporation's earnings and profits passed into its stockholders' hands. The Government relies heavily upon the opinion of Judge Stewart, as he then was, in Woodworth v. C. I. R., 6 Cir., 1955, 218 F.2d 719, 724; taxpayer would distinguish that decision on the basis that two years intervened between the acquisition of the stock by the purchasers and its sale to the company and there was no evidence of an antecedent plan. We agree that the present case differs in this respect from Woodworth and also from Wall v. United States, 4 Cir., 1947, 164 F.2d 462, and Lowenthal v. C. I. R., 7 Cir., 1948, 169 F.2d 694, on which the Commissioner relies and which taxpayer seeks to distinguish on like grounds. However, it is not enough that there be a difference; the difference must be a significant one, and here is where taxpayer's argument fails. For we are unable to see why the Commissioner may not lawfully determine that a sole stockholder's removal of earnings and profits from a corporation, which it intends to improve and expand, was "essentially equivalent to the distribution of a taxable dividend" under § 115(g), rather than a "partial liquidation" taxable on a capital gain basis under 115(c), even though the stockholder had just acquired the stock and had planned from the outset to do precisely what it did. See Ferro v. C. I. R., 3 Cir., 1957, 242 F.2d 838; and the full discussion of the history and the authorities in 1 Mertens, Law of Federal Income Taxation, § 9.100. Taxpayer relies on Fox v. Harrison, 7 Cir., 1944, 145 F.2d 521; Holsey v. C. I. R., 3 Cir., 1958, 258 F.2d 865, acquiesced in Rev.Ruling 58–614, 1958–2 C.B. 920; and Niederkrome v. C. I. R., 9 Cir., 1958, 266 F.2d 238, certiorari denied sub nom. Royce v. C. I. R., 1959, 359 U.S. 945, 79 S.Ct. 725, 3 L.Ed.2d 678. Fox v. Harrison is distinguishable as resting on a finding by the trial court that the purchaser of the stock "was acquiring said stock on behalf of the corporation and as a temporary expedient" [145 F.2d 522]; here there was no finding that Phoenix was acquiring the stock on Nedick's behalf. The two later decisions, Holsey v. C. I. R. being that of a divided court, relate to payments to stockholders other than the taxpayer sought to be taxed. Cases such as C. I. R. v. Ashland Oil and Refining Co., 6 Cir., 1938, 99 F.2d 588, certiorari denied, 1939, 306 U.S. 661, 59 S.Ct. 786, 83 L.Ed. 1057, and Georgia-Pacific Corp. v. United States, 5 Cir., 1959, 264 F.2d

326

161, also relied on by taxpayer, are not controlling as to problems under § 115 (g).

Judgment affirmed.