**Charles P. BALLENGER, Jr., and Myrtle S. Ballenger, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 8423.

United States Court of Appeals Fourth Circuit.

Argued Oct. 25, 1961.

Decided March 19, 1962.

C. Thomas Wyche, Greenville, S. C. (Wyche, Burgess & Wyche, Greenville, S. C., on the brief), for appellants.

Carolyn R. Just, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Loring W. Post, Attys., Dept. of Justice, and Joseph E. Hines, U. S. Atty., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from a judgment of the District Court denying a refund of income taxes in the amount of $14,655.03 plus interest for the year 1954. The explanation given for the deficiency assessment was that the redemption of all of the outstanding preferred stock of the corporation, which was owned by the taxpayers, who are husband and wife, was essentially equivalent to a dividend and, was not, therefore, entitled to capital gains treatment under the provisions of § 302(b) (1) of the Internal Revenue Code of 1954.

A chronological statement of the pertinent facts is as follows: In 1949 the Ballenger Paving Company, a corporation, was organized to succeed a partnership of the same name and engaged in the same business because one of the partners had died intestate leaving a widow and minor child. The court having jurisdiction of the estate agreed to incorporation of the business as an alternative to liquidation. It was represented to the court that preferred stock would be issued to the estate and the widow and common stock to the remaining participants, but these plans were not carried out and the estate and the widow received both common and preferred stock, as did all parties concerned.

In the resulting corporate setup, taxpayers received 260 shares each of common and preferred, representing approximately 20% of the outstanding stock. The remaining 80% of the stock went to unrelated parties, including the estate and widow of the deceased partner.

On January 29, 1953, a resolution was adopted by the corporation calling for the liquidation of all of the stock both common and preferred held by parties other than taxpayers. These resolutions referred to the transaction as a partial liquidation. They made no reference to retirement of taxpayers' stock, either preferred or common.

By March 13, 1953, the retirement of all of the stock other than that held by taxpayers was accomplished by exchanging machinery and equipment owned by the corporation for the stock. Minutes of a meeting held on March 30, 1953, referred to the partial liquidation of the company as having been completed.

On August 20, 1954, taxpayers, being all of the stockholders and directors of the corporation, caused resolutions to be passed calling for the retirement of all of the outstanding preferred stock in accordance with the terms of the certificates. The only reason for this action expressed in the minutes was the desire to eliminate the 5% annual dividend called for by the terms of the preferred stock.

On September 11, 1954, the taxpayers received $27,300.00 from the corporation, that being the call price of 260 shares of preferred in accordance with the terms of the stock certificates.

There is no contention that taxpayers intended to liquidate the corporation or even contract the company's operations; on the contrary, the operations were steadily expanding. Corporate earned surplus on the date of redemption was far in excess of $27,300.00. Proportion of stock ownership and voting control of the corporation were not changed by the retirement. Dividends had never been declared or paid on the common stock during the history of the corporation.

Upon the foregoing facts the District Court found that the stock redemption was essentially equivalent to the distribution of a taxable dividend under § 301 of the 1954 Act and, therefore, treated same as gross income to the taxpayers.

The taxpayers argue that the preferred stock which was being retired was originally issued for a valid business purpose: to prevent the liquidation of the business upon the death of one of its partners. They contend that when the stock of all the other stockholders was redeemed in 1953 the reasons for issuing preferred stock ceased to exist and this in itself constituted a valid business reason for redeeming their preferred stock. Indeed they say that the 1954 redemption of their stock was but the final step of a plan to liquidate all the preferred stock begun with the corporate resolutions of January 1953.

The Government denies that a valid corporate business purpose existed for redemption of taxpayers' stock at the time in question, but insists that even had a valid business purpose existed it would not in and of itself be sufficient to remove the transaction from the category of a dividend. It contends that the statute defines a dividend as any distribution by a corporation to stockholders paid out of accumulated or current earnings regardless of whether or not it was designated as such. The only exceptions recognized (with which we are here concerned) and thus given preferential treatment as capital gains under § 302 (b) of the 1954 Code are: (1) redemptions not essentially equivalent to a dividend, (2) redemptions that are substantially disproportionate, and (3) a complete redemption of all of a shareholder's stock.

For the purposes of the case, the pertinent parts of the 1954 Code became effective on June 22, 1954. INTERNAL REVENUE CODE OF 1954, § 391. Before attempting to apply the law to the facts of this case, let us examine some of the differences between the 1939 Code and the 1954 Code.

The 1954 Code substantially recast the law in this field. The distribution and reorganization provisions of the 1939 Code were sorted out and then rearranged into separate parts of subchapter C of Chapter 1 of subtitle A of the 1954 Code. Part I of subchapter C (26 U.S.C.A. §§ 301–318) contains rules for testing distributions by corporations other than liquidating distributions. Part II of subchapter C (26 U.S.C.A. §§ 331–346) covers liquidating distributions. Part III of subchapter C (26 U.S.C.A. §§ 351–367) covers corporate organizations and reorganizations with which we are not concerned in this case. In making the breakdown between Parts I and II of subchapter C an attempt was made to separate into their significant elements two general categories of cases dealing with corporate distributions which had been previously lumped together and treated as partial liquidations under § 115(a) and § 115(g) (1) of the 1939 Code. Thus under the 1954 Code, the category of cases wherein a distinction was drawn between stock redemptions which were to be given capital gains treatment rather than dividend treatment because they met certain tests when viewed from the standpoint of the stockholder's actions or motives are treated in Part I (26 U.S.C.A. §§ 301–318). On the other hand, the category of cases wherein a distinction was drawn between stock redemptions which were to be given capital gains treatment rather than dividend treatment because they met certain tests when viewed from the standpoint of the corporation's actions or motives are treated under Part II (26 U.S.C.A. §§ 331–346). In each category specific tests are provided which if met would entitle the distribution to capital gains treatment, but in each category there is also included a general negative test, e. g., that the distribution be "not essentially equivalent to a dividend" which if not met will deny the distribution capital gains treatment. See § 302(b) (1) and § 346(a) (2). The success of the effort to clarify the law in this area would have been unquestioned had not this vague negative test been included in the 1954 Code, thus re-injecting the confusion theretofore developed by the case law which has attempted to interpret the phrase "not essentially equivalent to a dividend".

When we attempt to apply the 1954 Code to a particular case, we must first

determine whether or not the transaction meets the tests laid down in Part II, i. e., does it constitute a "partial liquidation" as therein defined? If not, we then turn to the specific tests set forth in subsections (b) (2), (b) (3) and (b) (4) of § 302. If none of these specific tests apply then we must determine whether the distribution is "not essentially equivalent to a dividend" under subsection (b) (1) of § 302. If it is not essentially equivalent to a dividend, it is entitled to capital gains treatment, no matter that it fails all of the more specific tests set forth in the Code.

Turning now to the instant case, the facts do not bring it within the provisions of Part II of the 1954 Act, §§ 331–346, nor indeed does the taxpayer so contend. By § 331, capital gains treatment is accorded to property received by the taxpayer from a corporation in partial liquidation. The definition of a partial liquidation is found in § 346. Subsection (a) (2), the only part of § 346 relevant here, provides that a distribution of corporate property is treated as a partial liquidation if "the distribution is not essentially equivalent to a dividend, is in redemption of a part of the stock of the corporation pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year". The legislative history,[1] the Treasury Regulations,[2] and the applicable cases [3] indicate that a primary factor to be considered in the definition of a partial liquidation, although not the sole factor, is whether there has been a

contraction in the business of the corporation.[4] This test is not met in the present case, for there is no evidence of any lessening in the business being carried on by Ballenger Paving Company as a result of the redemption of the taxpayer's preferred stock. Indeed, the business was expanding. However, we need not pursue this issue further because neither does the taxpayer claim that his case falls within the partial liquidation provisions, nor was the case tried before the District Court on that theory.

If a redemption is not classified as a partial liquidation so as to be entitled to capital gains treatment via that route, then the provisions of § 302 must be examined to see if relief for the taxpayer can be found there.[5] Clearly, none of the "safe harbor" provisions of § 302(b) apply. The facts of this case do not meet the precise, mathematical test for a substantially disproportionate redemption, which is applicable in any event only to voting stock, § 302(b) (2); neither has there been a complete termination of the taxpayer's interest in the corporation, § 302(b) (3); nor does this case involve the reorganization of a railroad corporation, § 302(b) (4). Therefore, the taxpayer must, and does, rely upon § 302(b) (1), providing for capital gains treatment "if the redemption is not essentially equivalent to a dividend". Since the statute gives no further aid in determining whether cash or other property distributed by a corporation in redemption of its stock is equivalent to a dividend, recourse must be had to the judicially developed rules.[6]

---

1. S.Rep. No. 1622, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code, Cong. & Ad.Law News, pp. 4621, 4899 (1954).

2. Treas.Reg. § 1.346–1(a) (2).

3. See Commissioner v. Sullivan, 210 F.2d 607, 610 (5th Cir. 1954); Estate of Chandler, 22 T.C. 1158 (1954), aff'd, 228 F.2d 909 (6th Cir. 1955).

4. See Chommie, § 346(a) (2): The Contraction Theory, 11 Tax L.Rev. 407 (1956); Murphy, Dividend Equivalence. —The End of the Beginning?, 10 Tax.L. Rev. 213, 217–18 (1954). For a sharp

criticism of reliance on corporate contraction as a factor in characterizing a redemption as a partial liquidation, see Bittker, The Taxation of Stock Redemptions and Partial Liquidations, 44 Cornell L.Q. 299, 307 n. 22 (1959).

5. Treasury Regulation § 1.346–2 provides that, where both §§ 302 and 346 could apply, the latter section alone is controlling.

6. See S.Rep. No. 1622, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code, Cong. & Ad.Law News, pp. 4621, 4675 (1954).

■ Before we enter into the morass created by the decisions, it is necessary to clarify the function of the reviewing court in a case like this. Treasury Regulation § 1.302–2(b) states that "the question whether a distribution in redemption of stock of a shareholder is not essentially equivalent to a dividend under § 302(b) (1) depends upon the facts and circumstances of each case".[7] Since the issue of dividend equivalence is factual in nature, the scope of review on appeal is limited to two questions: first, did the lower court apply the correct criteria for determining dividend equivalence, and second, are the findings of fact supported by substantial evidence? With the possible exception of the Ninth Circuit, every court of appeals appears to be in agreement with this formulation.[8]

We now turn to the decisions setting forth the criteria which the Tax Court and the District Courts must apply to determine the applicability of § 302(b) (1). When the cases are viewed solely from the shareholder's perspective, two lines of decisions appear. The first applies a strict "net effect" test.[9] Under this test, the court must hypothesize a situation where the corporation did not redeem any stock, but instead declared a dividend for the same amount. The court then must examine the situation after the dividend and compare it with the actual facts of the case when stock was redeemed, viewed always from the shareholders' vantage point. The redemption is equivalent to a dividend if the results from the hypothetical dividend and the actual stock redemption are essentially the same. As stated by Judge Medina, "We must ask whether, viewing the transaction as a whole, different results were produced by what was in form a partial liquidation from the results that would have been produced, under the circumstances, by a dividend". Northup v. United States, 240 F.2d 304, 306 (2d Cir. 1957). Under this approach, factors to be considered are whether the same shareholders would have received the identical payments had the redemption been a dividend, and whether the redemption altered the shareholders' control over the corporation and their respective rights to its future earnings. In evaluating the effect of the redemption on the future relationship between the parties, it also seems appropriate to consider whether the re-

7. The Senate Report states that "your committee intends to revert in part to existing law by making the determination of whether a redemption is taxable as a sale at capital gains rates or as a dividend at ordinary income rates dependent, except where it is specifically provided otherwise, upon a factual inquiry." S. Rep. No. 1622, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code, Cong. & Ad.Law News, pp. 4621, 4870 (1954).

8. E.g., Ferro v. Commissioner, 242 F.2d 838, 840–41 (3d Cir. 1957); Commissioner v. Roberts, 203 F.2d 304, 307 (4th Cir. 1953). The Second Circuit has wavered on this point. The earlier cases held the question of dividend equivalence to be essentially one of fact, Kirschenbaum v. Commissioner, 155 F.2d 23, 170 A.L.R. 1389 (2d Cir. 1946) (L. Hand, J.), but Northup v. United States, 240 F.2d 304, 307 (2d Cir. 1957) (Medina, J.) stated that the scope of review was broader since the issue was one of the application of the law to the facts. Accord: Wilson v. United States, 257 F.

2d 534, 538 (2d Cir. 1958). The court seems now to have returned to its earlier position. Television Industries, Inc. v. Commissioner, 284 F.2d 322 (2d Cir. 1960) (Friendly, J.). Although the position of the Ninth Circuit is not perfectly clear, the cases which appear to adopt a contrary rule, over dissents by Judge Fee, are Pacific Vegetable Oil Corp. v. Commissioner, 251 F.2d 682 (9th Cir. 1957) and Earle v. Woodlaw, 245 F.2d 119 (9th Cir. 1957).

9. Kessner v. Commissioner, 248 F.2d 943 (3d Cir. 1957); Northup v. United States, 240 F.2d 304 (2d Cir. 1957); Kirschenbaum v. Commissioner, 155 F.2d 23 (2d Cir. 1946). The prior decisions in the Fourth Circuit appear to belong to this line of cases, although these opinions mention some factors which are more appropriate for consideration in the second line of cases. Commissioner v. Roberts, 203 F.2d 304 (4th Cir. 1953); Wall v. United States, 164 F.2d 462 (4th Cir. 1947).

demption is a part of a broader plan.[10] Considering all these factors, it becomes apparent that every pro rata redemption will be equivalent to a dividend, for in no way can it result in any alteration in the relationship of the shareholders, both with respect to their share of the distribution in question and in respect to future control and profits.[11] However, the converse is not true, that every non pro rata redemption qualifies for § 301(b) (1).

The second line of cases is not the direct antithesis of the first. All these cases adopt the "net effect" test, but add a further consideration—whether or not there are legitimate business purposes for the redemption.[12] An example of a redemption for a legitimate business purpose is the redemption of preferred stock to improve the corporations' credit position.[13] To be suitable for consideration, a business purpose is not to be confined to one which furthers the successful conduct of the corporation; purposes stemming from the personal business affairs of the shareholders also warrant attention. An example of the latter is the redemption of stock as a part of a shareholder's complete withdrawal from the business.[14] Of course, an acceptable business purpose can never be reducing income taxes, for the purpose of the statute is to prevent distribution of the earnings of the corporation to the shareholders at the lower, capital gains rates. Further not only is the legitimacy of the business objective to be achieved a factor to be considered, but also the purity of the motive for the redemption. Thus, it becomes relevant to consider whether the redemption plan initiated with the stockholders involved or with the corporate officers, whether in the preceding years the corporation had declared adequate dividends, and whether there were, in fact, corporate "earnings and profits",

10. Bains v. United States, 289 F.2d 644 (Ct.Cl.1961); Estate of Lukens, 246 F. 2d 403 (3d Cir. 1957). In both of these cases, the stock redemption was a part of a broader plan whereby the taxpayer was withdrawing completely from the business. However, it is doubtful that the Court of Claims was correct in holding, in the Bains case, that the redemption of the stock of the stockholder who remained in the business was also entitled to capital gains treatment. Since he was to be the sole owner of the corporation, the redemption of a part of his stock, being unessential to the effectuation of the plan for the withdrawal from the business of the other shareholders, should have been viewed as being a pro rata distribution and equivalent to a dividend. A similar case which reaches the same result as Bains, and therefore is subject to the same criticism, is United States v. Carey, 289 F.2d 531 (8th Cir. 1961).

11. Treasury Regulation § 1.302–2(b) provides: "All distributions in pro rata redemptions of a part of the stock of a corporation generally will be treated as distributions under § 301 if the corporation has only one class of stock outstanding". Professor Bittker takes the position that § 302(b) (1) can apply only to non pro rata redemptions. Bittker, The Taxation of Stock Redemptions and Partial Liquidations, 44 Cornell L.Q. 299, 322–25 (1959).

12. Heman v. Commissioner, 283 F.2d 227 (8th Cir. 1960); Earle v. Woodlaw, 245 F.2d 119 (9th Cir. 1957); United States v. Fewell, 255 F.2d 496 (5th Cir. 1958); Keefe v. Cote, 213 F.2d 651 (1st Cir. 1954); Jones v. Griffin, 216 F.2d 885 (10th Cir. 1954). The opinions in the Sixth Circuit do not disclose which line of decisions the court follows, but the results under the facts of their cases would no doubt be the same under either test. Bell v. Commissioner, 248 F.2d 947 (6th Cir. 1957); Woodworth v. Commissioner, 218 F.2d 719 (6th Cir. 1955). Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937 (1940), often cited as the progenitor of the strict "net effect" test, actually mentions factors more appropriate to the second approach. The Tax Court also appears to follow the second line of decisions. Decker, 32 T.C. 326 (1959); Stolz, 30 T.C. 530 (1958), aff'd Stolz v. Commissioner, 267 F.2d 482 (5th Cir. 1959).

13. See Jones v. Griffin, 216 F.2d 885 (10th Cir. 1954).

14. See United States v. Carey, 289 F.2d 531 (8th Cir. 1961).

as defined by § 316, to be distributed.[15] These factors are relevant only to establish a tax avoidance motive. Under this approach, a pro rata redemption of stock can have a business justification sufficient to overcome its resemblance to a dividend under the "net effect" test.[16] The result in any case would depend to a large extent on the weight to be given the business purposes, a matter on which those courts which have adopted this approach are far from agreement.[17]

Although the cases following the strict "net effect" test do not permit proof as to business purpose, underlying the approach is the assumption that tax avoidance will always be one of the purposes of a redemption which places the parties in a position identical to that in which they would have been placed had a dividend been declared. And conversely, whenever the results of the redemption are significantly different, there must have been a legitimate business purpose, for otherwise there would be no reason for the stockholders to consent to unequal treatment. On the other hand, since it

often happens that the corporation is closely held and the stockholders and corporate officers are the same people, courts following the second approach find it almost impossible to untangle the various purposes to say with any assurance that the redemption was justified by a legitimate business purpose.[18] Recourse in such circumstances should be to the factors emphasizing the net effect of the transaction if the statute is to be reasonably applied. Viewed in this way, the only difference between the two lines of cases is that courts following the first will tax as a dividend any redemption for which tax avoidance is likely to be a motivating factor, while courts adhering to the second line of cases adopt a more flexible approach, by sometimes permitting a legitimate business purpose to prevail despite a concurrent tax avoidance motive.

■■■ Returning to the present case, an examination of the District Court's findings of fact indicates that, in concluding that the redemption was equivalent to a dividend, the District Court followed the approach adopted by the second line of

15. See United States v. Fewell, 255 F.2d 496, 500–501 (5th Cir. 1958); Earle v. Woodlaw, 245 F.2d 119, 126 (9th Cir. 1957). Treasury Regulation § 1.302–2 (a) which states that the question of dividend equivalence should be decided "without regard to the earnings and profits of the corporation at the time of the distribution", is not necessarily inconsistent insofar as the presence of earnings and profits suggests a tax avoidance purpose for the redemption. The Treasury Regulation means only that a redemption should not be considered "not essentially equivalent to a dividend" and escape full taxation just because the distribution is one not includible in the taxpayer's ordinary income because there are no corporate earnings and profits. Dividend treatment in such a case will under § 301(c) (2) result in reducing the basis at which the stock is held.

16. In Keefe v. Cote, 213 F.2d 651 (1st Cir. 1954), an essentially pro rata redemption was not treated as a dividend because of what the court considered an overriding corporate business purpose. Analogous is Commissioner v. Sullivan, 210 F. 2d 607 (5th Cir. 1954) where the court

held, over a vigorous dissent by Judge Rives, that a legitimate business purpose for the redemption, plus a contraction in the corporation's business, classified the redemption as a partial liquidation despite the fact that the distribution was pro rata.

17. Compare Keefe v. Cote, supra note 16, with United States v. Fewell, 255 F.2d 496, 500 (5th Cir. 1958) where the court stated that "the mere existence of a single bona fide corporate purpose will not, standing alone, conclusively determine that the transaction does not result in an essential equivalent of the distribution of a taxable dividend".

18. In Keefe v. Cote, 213 F.2d 651, 657 (1st Cir. 1954), the case where a legitimate business purpose was allowed to prevail over a pro rata redemption, the court admitted that "in cases such as this, in which the stockholder-taxpayer and the principal if not as a practical matter the only corporate officer are one and the same person, it is difficult, to say the least, to distinguish between corporate purposes on the one hand and stockholder purposes on the other for transactions of the kind involved".

decisions. However, it is not necessary for us to choose between the two lines of cases because, with either approach, the District Court must be upheld.

We are dealing here with a sole stockholder who has caused the corporation to pay him $27,300.00 out of its earned surplus in redemption of all of his preferred stock. The redemption is pro rata. It is true that the taxpayer's wife holds one share in the corporation. This is too small to upset the pro rata characterization of the distribution,[19] and secondly, under the attribution of ownership rules of § 318, made applicable to § 302, the wife's ownership is constructively her husband's [20]. If we apply a strict "net effect" test to these facts, the redemption must not be given capital gains treatment because a pro rata redemption, at least when not a partial liquidation as defined by § 346, will always be essentially equivalent to a dividend.

The result is the same if we follow the second line of cases and inquire whether there is a legitimate business purpose which can outweigh the factors indicating dividend treatment. The taxpayer claims that the preferred stock was originally issued for a valid business purpose, to protect the interests of the widow and child of the deceased former partner according to the directions of the North Carolina state court having supervisory jurisdiction over the estate. The taxpayer further claims that it was a part of the original plan to redeem the preferred stock as soon as its usefulness ceased, as was the case once the interests in the corporation held by the widow and child and other outside stockholders had been terminated. However, we cannot understand how a valid reason for the issuance of preferred stock can, once its purposes have been served, be converted into a reason for its redemption. Even if it had been originally understood that the preferred stock would eventually be redeemed, such a fact is not, without more, a legitimate business justification.[21]

The taxpayer, however, assigns additional reasons for the redemption. It was thought undesirable from a corporate planning standpoint to burden the corporation with the obligation to pay dividends on the preferred stock which, if not paid, were cumulative. In addition, it is contended, the bonding company considers cumulative preferred stock objectionable. Finally, the taxpayer argues, financing by means of preferred stock is not as satisfactory from a business standpoint as financing by loans, both because interest payments are made a deductible expense by § 163 while dividend payments are not, and because the prevailing interest rate was lower than the 5% dividend on the preferred stock. Nevertheless, these objections could be remedied without at the same time effecting a distribution of corporate earnings at capital gains rates. The taxpayer could as readily have caused the preferred stock to be exchanged for common stock or have amended the corporate charter or by-laws to delete the objectionable features of the preferred stock. In the case of a pro rata redemption of stock especially, any business justification must be indeed compelling to overcome

---

19. For cases where the redemption was considered pro rata in the face of more substantial minority holdings, see Television Industries, Inc. v. Commissioner, 284 F.2d 322 (2d Cir. 1960) and Pacific Vegetable Oil Corp. v. Commissioner, 251 F.2d 682, 685 (9th Cir. 1957).

20. However, it is suggested that the attribution of ownership rules should not be too literally applied to § 302(b) (1). See Bittker, The Taxation of Stock Redemptions and Partial Liquidations, 44 Cornell L.Q. 299, 324 (1959); Ringel, Surrey & Warren, Attribution of Stock Ownership in the Internal Revenue Code, 72 Har.L.Rev. 209, 224 n. 57 (1958).

21. Contra, Cobb v. Callan Court Co., 274 F.2d 532, 538 (5th Cir. 1960); Keefe v. Cote, 213 F.2d 651, 657 (1st Cir. 1954). In both cases, the courts found a legitimate business purpose in the redemption of stock, the issuance of which had been justifiable, because, at that time, it was understood that the stock would eventually be redeemed. We cannot follow these cases because we can see no business purpose here, apart from the avoidance of taxes, advanced by the redemption.

the "net effect" test which points to a tax avoidance scheme.

For these reasons, the judgment below is affirmed.

Affirmed.