Samuel M. Levy and Isabel C. Levy v. Commissioner.
Levy v. Commissioner
Docket No. 4518-62.
United States Tax Court
T.C. Memo 1964-131; 1964 Tax Ct. Memo LEXIS 203; 23 T.C.M. (CCH) 803; T.C.M. (RIA) 64131; May 11, 1964
*203 Held, redemption of wife's preferred stock (where she and her husband retained the balance of the stock interest) was essentially equivalent to a dividend within the meaning of section 302(b)(1), I.R.C. of 1954. Mark H. Berliant, Fountain Square Bldg., Cincinnati, Ohio, for the petitioners. Rodney G. Haworth, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioners' 1958 income tax in the amount of $8,776.14. The issue is whether petitioner Isabel C. Levy received dividend income in the amount of $15,000 when the sum was paid to her in 1960 by the Associated Advertising Agency, Inc. in redemption of all of its preferred stock which she had held since its issuance. Findings of Fact Petitioners are husband and wife residing in Cincinnati, Ohio. They filed their joint income tax return for the year 1958 with the district director of internal revenue, Cincinnati, Ohio. The corporation called Associated *205 Advertising Agency, Inc. was formed in 1946 with 80 shares of common stock and 150 shares of 4 percent preferred non-voting stock. All of the stock was issued and sold for $100 a share with petitioner Samuel M. Levy acquiring 50 shares of the common stock, being named president, and petitioner Isabel C. Levy acquiring all of the preferred stock and 30 shares of the common stock, being named secretary and treasurer. The corporation conducted a general advertising agency business. Such a business requires a high credit rating before it can successfully operate. It has to supply financial information with respect to its capitalization and financial standing to various national associations, such as American Newspaper Publishers Association, Periodical Publishers Association and others before it will receive a rating entitling the agency to the 15 percent commission for advertising sales. The national association rate advertising agencies on financial stability and grades by various brackets. A top rating requires $50,000 or over of quick working capital. At the time the corporation was being formed Samuel M. Levy did not have the funds to invest in the business necessary to secure *206 for the corporation the desired top rating. Isabel Levy had independent means derived mainly through inheritance from members of her family. The reason $15,000 of the investment she made in the corporation was handled by a preferred stock issue rather than a loan was to give the corporation a good credit rating. The corporation prospered and within two years the company began accumulating money for the purpose of ultimately redeeming the preferred stock. In 1958 (and possibly for a couple of years prior thereto) it was in a financial position to redeem the preferred stock and still retain its top rating. Also by this period much of the advertising business had shifted to television and radio where the credit requirements were not so strict. The corporation's retained earnings on June 30, 1958 were $48,981.90. In August of 1958 the corporation redeemed the preferred stock by paying Isabel $15,000 for same. Respondent determined Isabel received dividend income in the amount of $15,000 from such redemption. Isabel retained her common stock interest and her salaried position as an officer of the corporation after the redemption. The distribution of $15,000 by the corporation to petitioner *207 Isabel C. Levy in redemption of 150 shares of its preferred stock constituted the distribution of a dividend taxable as ordinary income. Opinion Section 302, Internal Revenue Code of 1954, [1] sets forth the stock redemptions that shall be treated as sales. Section 302(b)(1) provides, in effect, that the redemption shall be treated as a sale "if the redemption is not essentially equivalent to a dividend." The issue here is whether the corporation's redemption of petitioners' stock was essentially equivalent to a dividend. We hold it was. Section 302(c)(1) provides that in determining ownership of stock for this section the attribution of ownership rules laid down in section 318(a) shall apply. This means petitioner was the constructive owner of the stock in the corporation actually owned by her husband. The application of the attribution of ownership rule means the redemption here was pro rata in the sense that no change in the proportional ownership of stock resulted from the redemption. It is as if petitioner were the sole stockholder and the redemption *208 was of a portion of her shares. [2]
Section 302(b)(1) is the successor of section 115(g) of the Internal Revenue Code of 1939 which also contained the test of dividend essential equivalence. It would seem that a corporation's redemption of its stock would be characterized as essentially equivalent to a dividend whenever it is pro rata amongst shareholders and the transaction leaves the ownership of the corporation substantially the same. Although this observation has been made before ( Keefe v. Cote, 213 F. 2d 651; Bradbury v. Commissioner, 298 F. 2d 111; Ballenger, Jr. v. United States, 301 F. 2d 192) the courts have quite generally held that a determination that the redemption was essentially pro rata and did not produce a material shift in ownership, does not *209 terminate inquiry into whether it was or was not essentially equivalent to a dividend. Admittedly it is the most important factor to consider. Since a true dividend is a pro rata distribution of earnings to the shareholders, which leaves their proportional ownership of the corporation undisturbed, a redemption that distributes earnings pro rata amongst the shareholders but leaves their proportional ownership of the corporation undisturbed would certainly closely resemble a dividend. Isidore Himmel, 41 T.C. 62; Ballenger, Jr. v. United States, supra; Bradbury v. Commissioner, supra.However, it has been held that the transaction might be removed from dividend equivalence even though the redemption is pro rata if there exists a sufficiently compelling corporate business purpose for the redemption that can be said to be the real reason for the redemption. Bradbury v. Commissioner, supra; Ballenger, Jr. v. United States, supra.But as pointed out in the Bradbury case, even the existence of a business purpose for the pro rata redemption will not, standing alone, "dispel the aura of dividend equivalence." Petitioner argues *210 the redemption here was dictated by a corporate business purpose. The argument is that the preferred stock had completely served its purpose; that the funds represented by the preferred stock had been secured in the first instance, and in a preferred stock issue rather than loan method, in order to help the corporation attain the $50,000 top-rating level; and that this $50,000 top-rating level had been reached and therefore the preferred stock had served its purpose and the now unneeded funds should be returned by redemption of the stock. We can agree with petitioner as to the original purpose for the issuing of the preferred stock and that by the year in question its financial position was such that it could redeem the stock and still maintain its top rating. However, it is admitted this was equity capital. Here, as in Isidore Himmel, supra, the stock evidenced a true equity investment. The mere fact that there was at the time of issuance some understanding the stock would later be redemed, does not furnish a corporate business purpose for the redemption. We see no business purpose that was served by the redemption. This was a company that operated upon capital. It *211 can hardly be said it was able to operate any better after it redeemed its stock. Its credit standing was not improved. When a corporation possesses funds in excess of funds needed for operating capital, it is not serving a corporate purpose when it distributes unneeded funds to its shareholders in return for their stock. In fact it would seem that a situation where a corporation has unneeded funds is a classic one for declaration of dividend. We see no business purpose justification at all. By application of the attribution rule, and this must be done, it is as if the sole stockholder receives the corporate earnings in return for part of her stock. This was clearly a redemption that was essentially equivalent to a dividend. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. It is significant this redemption could have been achieved without tax liability if petitioner had been willing to proceed under section 302(c)(2)↩ where attribution among members of a family is waived if certain conditions are met. Of course this would mean she would have to give up all interest in the corporation (including her position as an officer) for a period of 10 years.