**Morris COMESS and Esther Comess, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 7161–N.**

United States District Court, E. D. Virginia, Norfolk Division.

Dec. 10, 1969.

Alan J. Hofheimer, Robert C. Nusbaum, Hofheimer, Nusbaum & McPhaul, Norfolk, Va., for plaintiffs.

Helen Marmoll, Dept. of Justice, Tax Division, Washington, D. C., for defendant.

## MEMORANDUM OPINION

MacKENZIE, District Judge.

Plaintiffs brought this action to challenge the Commissioner of Internal Revenue's determination that they should have reported as taxable income a $5,000.00 note that the plaintiff, Morris Comess, received in 1963 in exchange for preferred stock he held in Paramount Bedding Corporation (Paramount). At the time of the transaction in question, Morris Comess was Vice-President and an owner of twenty-five per cent (25%) of the common stock of Paramount. The government claims

that the $5,000.00 is taxable as a redemption essentially equivalent to a dividend under § 302(b) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 302(b) (1).

Around the beginning of 1950, Paramount was in need of funds. The four principal stockholders, including the plaintiff herein, Morris Comess, advanced $19,000.00 in proportion to their proprietary interests in the corporation. There was no express agreement as to when these advances would be repaid. Neither the plaintiff, Morris Comess, nor the other stockholders, received notes or other evidence of indebtedness for their advance; however, the $19,-000.00 was listed on the corporate books as open account indebtedness to corporate officers. The plaintiff, Morris Comess, in addition to the other corporate officers, testified that they intended to be repaid when the corporation was able to make the repayment. Plaintiff asserts that this 1950 advance was in fact a loan and was not intended to be a contribution to capital, as the government had determined it to be. In either event, Paramount deemed it desirable to remove the "officer indebtedness" account from the corporate balance sheet for credit purposes, and in November, 1950, Paramount's corporate charter was amended so that it could issue redeemable preferred stock to replace the debt account on the balance sheet. This was done that same month.

In April of 1953 unpaid bonuses of $2,500.00 each due to the four officers were funded with four notes in the same amount. These notes were exchanged four months later for 100 shares of redeemable preferred stock totalling $10,-000.00. This stock, along with the November of 1950 issues, remained unredeemed until 1963 when Paramount believed that its corporate balance sheet no longer presented a problem. In 1963 all of the preferred stock was retired in exchange for five-year notes bearing interest at five per cent (5%), the same rate as the dividends paid on the preferred stock. The Commissioner made no as-

sessment for taxes on the portion of the 1963 redemption attributable to Morris Comess's $2,500.00 bonus, and that aspect of the redemption is not before this Court. No substantial change in interest in Paramount resulted from these transactions.

In 1966 taxpayer sold his interest in Paramount Bedding, but retained the interest bearing notes which came due in 1968. At that time taxpayer accepted new notes at eight per cent (8%) interest per annum for the $7,500.00 that Paramount owed him.

The principal question presented is whether the portion of the 1963 redemption attributable to Morris Comess's 1950 advance of $5,000.00 resulted in tax liability under Section 302(b) (1).

The case law governing § 302 of the Internal Revenue Code of 1954 in general has fairly well established that whether a distribution in redemption is essentially equivalent to a dividend depends on the facts and circumstances of each case. Ballenger v. United States, 301 F.2d 192 (4th Cir. 1962); See also: Treasury Regulations § 1.302–2(b). The question of what criterion should be applied to make the appropriate factual determination, however, has been answered differently in various circuits. The Fourth Circuit in *Ballenger,* supra, noted two distinct lines of cases between which it was unnecessary to choose because the same result would have been obtained under either test.

The first line of decisions applies to what has been termed the "net effect" test which requires the court to hypothesize a situation where the corporation declared a dividend instead of redeeming stock for the same amount. After examining the same facts, if the results from the vantage point of the shareholder are essentially the same as under the redemption then the redemption is equivalent to a dividend. Under this test every pro rata redemption will be treated as a dividend equivalent because no alteration will result in the relationship of the shareholders with respect to

their control of profit sharing in the future. See: Ballenger v. United States, supra, at 196–197, and cases cited.

The second line of cases adds a further consideration to the "net effect" test—whether the redemption was motivated by a legitimate business purpose. Under this test other factors become relevant, such as: who initiated the redemption plan, whether the corporation had declared adequate dividends, and whether corporate earnings and profits as defined by § 316 of the Code, in fact existed. According to the Fourth Circuit in *Ballenger,* supra, these factors are relevant only for the purpose of establishing a tax avoidance motive. In describing this test, the Fourth Circuit said at 301 F.2d 198:

> "Under this approach, a pro rata redemption of stock can have a business justification sufficient to overcome its resemblance to a dividend under the 'net effect' test. The result in any case would depend to a large extent on the weight to be given the business purposes, a matter on which those courts which have adopted this approach are far from agreement.
>
> \* \* \* \* \* \*
>
> " \* \* \* [t]he only difference between the two lines of cases is that courts following the first will tax as a dividend any redemption for which tax avoidance is likely to be a motivating factor, while courts adhering to the second line of cases adopt a more flexible approach, by sometimes permitting a legitimate business purpose to prevail despite a concurrent tax avoidance motive."

The government relies heavily on the more recent Fourth Circuit decision in Coyle, Jr. v. United States, 415 F.2d 488 (1968), which held a stock redemption to be essentially equivalent to a dividend. The Court in that case said:

> "Although several tests have been devised and several factors exalted in determining whether a redemption is not in essence a dividend, we think there is one overriding objective criterion—a significant modification of shareholder interests. \* \* \* As the First Circuit has declared, ' \* \* \* we believe that the indispensable first step in making this determination is whether the redemption of stock has caused a meaningful change in the position of the shareholder with relation to his corporation and other shareholders.' Bradbury v. Commissioner of Internal Revenue, 298 F.2d 111, 116 [9 AFTR 2d 398] (1962). If the taxpayer's control or ownership of the corporation is basically unaltered by the transaction, then the proceeds he has received as a result of manipulating his corporate stock must be taxed as a dividend. See: Commissioner of Internal Revenue v. Berenbaum, 369 F2d 337 [18 AFTR 2d 6094] (10th Cir. 1966)."

In the *Coyle* case, because of the constructive stock ownership rules of § 318 of the Internal Revenue Code, which are not in issue in the case at bar, the Court found that the taxpayer had precisely the same number of shares after the transaction as before. In *Coyle,* supra, there was no claim of a business purpose exception. The Court did indicate, however, that "the real question here is what was accomplished by this transaction," quoting from Wiseman v. United States, 371 F.2d 816, 818 (1st Cir. 1967). The Fourth Circuit in *Coyle* further said:

> "The answer here is that while corporate ownership and control remained the same, taxpayer, the major shareholder, had come into possession of $19,800."

█ In 1963 Morris Comess came into possession of a promissory note in exchange for redeemed preferred stock. This transaction had no appreciable effect on his share of the ownership or control of Paramount Bedding; however, this does not automatically mean that the note was essentially equivalent to a dividend even though, as the Fourth Circuit has indicated, this factor constitutes an overriding objective criterion.

The taxpayer has asserted that the entire transaction was motivated by business reasons and that the redemption was not a vehicle for withdrawing funds from the corporation without incurring tax liability. The question of whether a legitimate business purpose is sufficient to affect the taxpayer's potential liability under § 302 of the Code was not before the Fourth Circuit in Coyle, Jr. v. United States, supra, although the same issue was treated in the earlier Fourth Circuit case of Ballenger v. United States, supra, and has been considered in other circuits and in the Tax Court.

The difficulty in the present case is occasioned by the fact that the Fourth Circuit has not committed itself clearly to either one test or the other. In *Ballenger*, supra, while not adopting either test, though applying both, the Fourth Circuit indicated "[i]n the case of a pro rata redemption of stock especially, any business justification must be indeed compelling to overcome the 'net effect' test which points to a tax avoidance scheme." 301 F.2d 192, 199. The Court in that case found that there was no business purpose apart from the avoidance of taxes and therefore declined to follow Cobb v. Callan Court Co., 274 F.2d 532 (5th Cir. 1960), or Keefe v. Cote, 213 F.2d 651 (1st Cir. 1954), both finding a legitimate business purpose in the redemption of stock which justifiably had been issued with the understanding that it would be redeemed eventually. The taxpayer in *Ballenger*, supra, had urged that preferred stock was originally issued to protect the interests of the widow and child of a former partner according to the directions of a North Carolina State Court with jurisdiction over the estate, and that the stock was intended to be redeemed when its usefulness ceased. The Court said:

"However, we cannot understand how a valid reason for the issuance of preferred stock can, once its purposes have been served, be converted into a reason for its redemption. Even if it had been originally understood that the preferred stock would eventually

be redeemed, such a fact is not, without more, a legitimate business justification." 301 F.2d 192, 199.

The Fourth Circuit in *Coyle, Jr.*, supra, cited with approval the First Circuit decision in Bradbury v. Commissioner of Internal Revenue, 298 F.2d 111, 117 (1962), which held that a taxpayer's legitimate business purpose was not sufficient to overcome the weight of the fact that a distribution in redemption was essentially pro rata with no significant change in the relationship "between the shareholders *inter se* and *vis a vis* the corporation". The taxpayer in *Bradbury* was indebted to her manufacturing corporation. Before agreeing to finance a plant modernization, the bank advised taxpayer that her indebtedness should be "cleaned up". This was accomplished by a stock redemption in exchange for a cancellation of indebtedness. The First Circuit in the *Bradbury* case said:

"The determination that a distribution in redemption has worked an essentially *pro rata* distribution and produced no material or significant shift in the corporate shareholder relationship does not, of course, terminate inquiry into whether the transaction which produced these results was or was not essentially equivalent to a dividend. We simply say that in the hierarchy of criteria which may be adduced as evidentiary of this ultimate conclusion these factors must be accorded a preeminent position. And where they are present, the record must contain conspicuously countervailing considerations to dispel the aura of dividend equivalence which their presence irresistibly impels." 298 F.2d 111, 117.

The Court in *Bradbury* also reviewed its earlier decision in Keefe v. Cote, supra, where it upheld a jury verdict for the taxpayer in a case submitted to the jury on the "basis that the redemption was attempted for the purpose of removing what was deemed to be an adverse reflection on the corporation's credit rating." 298 F.2d 111, 118.

While pointing out that the showing of a single legitimate business purpose does not conclusively prevent a determination of dividend equivalence, the Court in *Bradbury* further said:

"In a proper case, the presence of a legitimate corporate business purpose may well be relevant as an offsetting factor to a determination of dividend equivalence." 298 F.2d 111, 118.

In sum it appears that the Fourth Circuit rule is substantially the same as that of the First Circuit as enunciated in *Bradbury*, supra. The possibility is not foreclosed that a legitimate business purpose, albeit a compelling one, remains part of the test for dividend equivalency after *Ballenger*, supra. The business purpose issue was not present in the *Coyle, Jr.* and *Ballenger* cases, which together yield a test where the primary factor is the change in shareholder relationships resulting from a redemption. The weight of this factor can be overcome only by a compelling business justification.

It remains for the Court to consider whether in the case at bar there was a legitimate business purpose sufficiently compelling to overcome the taint of dividend equivalency stemming from a substantially pro rata distribution in redemption of preferred stock. The practice of the Tax Court is instructive on this question. They have found no dividend equivalent in cases where the preferred stock was issued to remove an officer debt from the corporate balance sheet in order to improve the corporate credit rating.

In Joe L. Smith v. Commissioner, 49 T.C. 476 (1968), a corporation, in order to improve its balance sheet in connection with an application for a television station pending before the F.C.C., transferred to its majority stockholder, the petitioner, a $40,000.00 corporate obligation owed to a third party. In consideration for assuming this corporate obligation the corporation gave petitioner additional corporate stock. Seven years later, in 1961, it was deemed appropriate to restore the $40,000.00 obligation to the corporation. The transaction involved the following steps: (a) the corporation issued $40,000.00 in debentures to petitioner in exchange for 800 shares of its common stock; (b) petitioner delivered his personal check to the creditor in exchange for an outstanding promissory note in that amount; and (c) petitioner than transferred the debentures to the creditor in exchange for his $40,000.00 check. The Tax Court held that this transaction was not essentially equivalent to a dividend within the meaning of Section 302(b) (1) of the Internal Revenue Code of 1954, pointing out that the petitioner "did not enjoy any monetary or other economic benefit as a result of these transactions."

The Tax Court in Smith v. Commissioner, supra, relied both on Keefe v. Cote, supra, and another Tax Court decision, Estate of Henry A. Golwynne, 26 T.C. 1209 (1956), in which the facts were similar to Keefe v. Cote, supra. In the *Golwynne* case the decedent taxpayer was paid a portion of his salary in the form of promissory notes. The corporation, in order to improve its credit standing, issued preferred stock in exchange for the notes. Later the stock was redeemed. The Tax Court held that because the issuance and the redemption of the preferred stock were part of a corporate purpose of strengthening the corporation's credit position, the redemption was not essentially equivalent to a dividend.

From these cases it appears that improving the corporate balance sheet by exchanging later to be redeemed preferred stock for debts owed to shareholders is a sufficient business purpose to make a redemption exempt from dividend treatment. We see no basic difference between an officer loaning funds by taking a promissory note for a portion of his salary as in Estate of Henry A. Golwynne, supra, and a single officer who advances his own personal funds in the form of a loan. Indeed, the Commissioner declined to assess the portion of Paramount's 1963 redemption attributable to Morris Comess's salary bonus

that had not been paid. The government, however, considered the 1950 advance to be a contribution to capital.

In the final analysis, if petitioner's advance actually constituted a capital contribution, then the redemption would be essentially equivalent to a dividend, whereas, if the advance amounted to a loan, then taken together with other circumstances, the redemption might not be treated as a dividend. Viewing all of the facts of this case in light of the heavy presumption of dividend equivalency, this Court is of the opinion that the 1950 advance made by Morris Comess to Paramount was in the nature of a capital contribution and that the subsequent pro rata redemption of preferred stock issued to Morris Comess and the other officers was essentially equivalent to a dividend. The redemption, therefore, was an event taxable as ordinary income under the provisions of the Internal Revenue Code of 1954, 26 U.S.C.A. § 302(b) (1).

Having determined that Paramount's 1963 redemption was essentially equivalent to a dividend, however, the question remains as to whether the receipt of negotiable, but subordinated, promissory notes constitutes recognized income within the meaning of the tax law. Taxpayer contends that the notes did not constitute payment for the redemption, but rather evidence of the indebtedness owed by the corporation. In addition, they argued that the notes were not marketable and, therefore, were not of sufficient liquidity to constitute payment in the tax year of 1963.

Generally, notes or other evidences of indebtedness received in payment constitute income to the extent of their fair market value. Pinellas Ice & Cold Storage Co. v. Commissioner of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428 (1933). That the notes were paid in fact or were to be paid in a subsequent year is a factor often to be considered in determining market value, although such fact alone is not conclusive of value at the time of the receipt. Mertens, Federal Income Taxation (1961) Vol. 2, § 11.07, pp. 23–24. In the case of a dividend, then, notes paid would be regarded as the equivalent of cash to the extent of their fair market value. "The burden is on the taxpayer to show that notes taken in payment had no fair market value when received. The Commissioner's determination will stand unless overcome by sufficient evidence." Mertens, supra, p. 25.

This Court is of the opinion that the plaintiffs have not met their burden in showing that the notes have no value. The plaintiffs have shown, however, that the notes probably had a value less than face value because of the fact that the notes were unsecured, subordinated to other creditors and not due for five years. It will therefore be necessary to hear additional evidence on the value of these notes unless the parties can agree to stipulate to a figure fairly representing the diminished value of these notes due to their reduced marketability.

It is directed, therefore, that the parties confer towards establishing a value for the 1963 note and thereafter present an Order in accord with this Memorandum Opinion.