*Decision will be entered under Rule 50.*

ESTATE OF HENRY A. GOLWYNNE, DECEASED, SAMSON ROSENBLATT AND ISIDORE ENGLANDER, EXECUTORS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54006. Filed September 28, 1956.

*Melvin Semel, Esq.*, for the petitioner.
*A. Jesse Duke, Jr., Esq.*, for the respondent.

OPINION.

RICE, *Judge:* This proceeding involves a deficiency in income tax for the year 1949 in the amount of $4,820.81.

The only issue is whether the redemption of preferred stock which decedent owned was "at such time and in such manner" as to make it "essentially equivalent to the distribution of a taxable dividend" within the meaning of section 115 (g) of the 1939 Code. All other issues raised in the petition were conceded.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Decedent was a resident of New York City during the year in issue. He filed his individual income tax return for such year with the former collector of internal revenue for the third district of New York. This case was heard in New York City on March 29, 1956. Henry A. Golwynne died on April 3, 1956. Samson Rosenblatt and Isidore Englander are the duly appointed executors of decedent's estate.

At all times here pertinent, decedent was the president and sole stockholder of Golwynne Chemicals Corporation (hereinafter referred to as the corporation).

During the years indicated, the corporation paid the following salary to decedent as compensation for his services as president:

| | |
|---|---|
| 1942 | $25, 000 |
| 1943 | 25, 000 |
| 1944 | 15, 000 |
| 1945 | 25,.000 |

Because it did not wish to impair its cash position in each of the aforementioned years, the corporation paid decedent a part of his salary by giving him its promissory notes in lieu of cash. The amounts of the notes so given were as follows:

| | |
|---|---|
| 1942 | $17, 086. 65 |
| 1943 | 17, 702. 73 |
| 1944 | 7, 036. 83 |
| 1945 | 22, 000. 00 |

On his individual income tax returns for each of the aforementioned years, decedent reported the full amount of his salary, including the notes, as taxable income.

Because the corporation wished to improve its credit standing, it decided, in 1944, to issue preferred stock to decedent in exchange for $25,000 of the notes which he held. On July 31, 1944, the corporation issued 250 shares of $100-par-value preferred stock in exchange for a like amount of notes. Again, on May 15, 1946, the corporation issued 200 shares of $100-par-value preferred stock to decedent in exchange for $20,000 of notes which he held.

Prior to 1948, $18,826.21 of the corporation's outstanding notes held by decedent had been canceled on its books against balances due from him. On July 31, 1948, 200 shares of the preferred stock were redeemed at par. On July 29, 1949, 75 additional shares of such preferred stock were redeemed at par. Decedent received a check from the corporation in the amount of $7,500 on that day and immediately paid such sum to the corporation to offset an overdraft in his drawing account in like amount.

Set forth below is the amount of the corporation's outstanding common and preferred stock and the amount of its earned surplus at the end of its fiscal years July 31, 1942, to July 31, 1949:

| Fiscal year ended July 31 | Common stock | Preferred stock | Earned surplus |
|---|---|---|---|
| 1942 | $25,000 | | $44,286.55 |
| 1943 | 25,000 | | 56,740.96 |
| 1944 | 60,000 | $25,000 | 64,635.95 |
| 1945 | 60,000 | 25,000 | 76,790.46 |
| 1946 | 60,000 | 45,000 | 113,585.89 |
| 1947 | 160,000 | 45,000 | 101,933.80 |
| 1948 | 160,000 | 25,000 | 208,038.23 |
| 1949 | 160,000 | 17,500 | 261,449.46 |

The corporation never paid a cash dividend on its common or preferred stock.

On his income tax return for 1949, the decedent did not report as income the $7,500 received in redemption of the 75 shares of preferred stock in that year. The respondent determined that such sum constituted taxable dividend income to him under the provisions of section 115 (g).[1]

Decedent argued that the redemption and distribution did not constitute a taxable dividend within the meaning of section 115 (g), because the stock was originally issued for a bona fide corporate purpose—that purpose being an improvement of the corporation's credit position with banks by the elimination from its balance sheet of the

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

notes payable to him. He argued further that when the corporation eventually redeemed the stock, it was merely completing the initial transaction of repaying the notes and thereby making a cash payment to him of his salary for which the notes had originally been issued. He stressed the fact that from 1942 to 1945, inclusive, he reported the full amount of his salary, including the notes, as taxable income, and argued that to tax the distribution received upon the redemption of the preferred shares in 1949 would have the effect of taxing twice what was, in reality, the payment of his salary. The decedent cited *Keefe* v. *Cote*, 213 F. 2d 651 (C. A. 1, 1954), in support of his argument.

The facts in *Keefe* v. *Cote, supra*, closely parallel those before us here. There, a corporation gave the taxpayer some notes in settlement of his salary. He included the value of the notes in his gross income. Preferred shares of stock were exchanged for the notes, allegedly to improve the corporation's credit position. The shares were subsequently redeemed and the corporation gave its note for the major portion of the redemption price to the taxpayer's mother in payment of a debt which he owed to her. The Court of Appeals held that such redemption was but the final step in carrying out the original legitimate corporate purpose of improving its credit position, and that the consummation of that business purpose was the "net effect" of the redemption and distribution there in question.

Since *Flanagan* v. *Helvering*, 116 F. 2d 937 (C. A., D. C., 1940), affirming a Memorandum Opinion of this Court dated December 27, 1938, the courts have relied repeatedly on the so-called net effect test to determine the factual question here presented. That is to say, if the "net effect" of a stock redemption and distribution is essentially equivalent to a dividend distribution, then it is so taxed; if not, if a legitimate business purpose prompted the redemption and distribution, then it is not taxable as a dividend.

We agree with decedent that *Keefe* v. *Cote, supra*, is sound precedent for the position which he took here and should control our conclusion. In holding that the redemption and distribution here was not essentially equivalent to a taxable dividend within the meaning of the statute, we recognize in such a case, where the taxpayer is the corporation's sole stockholder, it is often difficult to distinguish between a bona fide corporate purpose and the personal motives of the taxpayer. But apropos of the business purpose which we find was present here is the language of the Court of Appeals in *Keefe* v. *Cote, supra*, at p. 657:

In cases such as this, in which the stockholder-taxpayer and the principal if not as a practical matter the only corporate officer are one and the same person, it is difficult, to say the least, to distinguish between corporate purposes on the one hand and stockholder purposes on the other for transaction of the kind involved. But the background for the redemption and distribution sheds some

light on its purpose. As already appears the block of 248 shares was originally given to the taxpayer in exchange for an interest-bearing promissory note which had previously been given to the taxpayer in settlement of his claim for salary, the purpose of the exchange of the stock for the note being a corporate one, *i. e.* to improve, or at least to remove what was considered to be an adverse reflection upon, the corporation's credit position. And the taxpayer testified that when the certificate for the 248 shares was issued to him it was understood that the corporation would redeem them when it could do so conveniently. Thus it could be found that there was a corporate purpose in issuing the shares, and it could also be found that they were redeemed in carrying out that corporate purpose.

Furthermore, the fact that the taxpayer, although on the cash basis, paid income taxes for 1936 on approximately two-thirds of the sum here involved casts some doubt upon the existence of a purpose for the redemption to avoid the imposition of personal income taxes and indirectly strengthens the inference in favor of a corporate purpose for the transaction. * * *

Here, also, decedent reported his full salary, including the notes, as taxable income in the year of receipt. We must agree with him, that to tax the distribution in question as a dividend would have the effect of taxing his salary twice—a result always to be avoided unless required by the express mandate of the taxing act. *United States* v. *Supplee-Biddle Co.*, 265 U. S. 189 (1924). Such a redemption and distribution, as disclosed by the facts here, we believe to be outside the congressional purpose in enacting section 115 (g). The respondent here raised no issue as to the reasonableness of the amount of petitioner's salary. Hence, we do not have before us the case where a taxpayer's salary was unreasonably high, was paid in large part by corporate notes, and later exchanged for stock which was subsequently redeemed. That situation, no doubt, would call for a different result than here because, in the face of those facts, it would be difficult to show a continuing bona fide corporate business purpose.

*Decision will be entered under Rule 50.*