Robert H. Herzog and Elizabeth W. Herzog v. Commissioner.
Herzog v. Commissioner
Docket No. 452-62.
United States Tax Court
T.C. Memo 1963-303; 1963 Tax Ct. Memo LEXIS 42; 22 T.C.M. (CCH) 1595; T.C.M. (RIA) 63303; November 4, 1963
Jacob H. Herzog, 11 N. Peali St., Albany, N. Y., for the petitioners. Gerald J. Robinson, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency in petitioners' income tax for 1959 in the amount of $15,328.73. The sole issue presented for our decision is the correctness of the respondent's action in determining that the receipt by petitioner Robert H. Herzog of $24,000 from Herzog Supply Co., Inc., in exchange for 240 shares of its preferred stock constitutes the distribution of a dividend to which section 301 of the Internal Revenue Code *44 of 1954 applies. Findings of Fact The stipulated facts are found as stipulated. Petitioners are husband and wife residing at Kingston, New York. The husband will at times be referred to as petitioner. They filed their joint income tax return for 1959 with the director at Albany, New York. Herzog Supply Co., Inc., sometimes hereinafter referred to as the corporation, is a corporation organized in 1931 under the laws of the State of New York. Its principal place of business is located at Kingston, New York. At all times here material Herzog Supply Co., Inc., was engaged in the wholesale and retail hardware, paint, houseware, and plumbing business. Approximately 75 percent of the sales of the corporation during the years here pertinent were made to wholesale purchasers and approximately 25 percent were made to retail customers. During 1939 and 1940 the outstanding common stock of Herzog Supply Co., Inc., was owned as follows: 51 percent was owned by petitioner's father, Matthew H. Herzog; 48 percent by petitioner; and 1 percent by petitioner's mother, Grace H. Herzog. During those years Matthew H. Herzog was president of the corporation and Robert H. Herzog was its vice president, *45 treasurer, and general manager. From the time of the formation of Herzog Supply Co., Inc., in 1931 until July 1, 1940, it was its practice to set up on its books accounts in the names of petitioner and Matthew H. Herzog. Each month the corporation credited to the accounts of petitioner and his father amounts representing their salaries and rental to Matthew H. Herzog for the use of certain property which he owned and leased to it. From these accounts the corporation paid certain personal debts of Robert H. Herzog and Matthew H. Herzog. They reported the entire amounts so credited to their accounts on their income tax returns for the years in which credited, regardless of whether or not such amounts were entirely spent for their benefit. As of December 31, 1939, the corporation owed Matthew H. Herzog $32,000 described on its books as "deferred liability" and $5,360 listed as "owed to officers." During 1940 the indebtedness of Herzog Supply Co., Inc., to Matthew H. Herzog was increased to $50,000. The above-mentioned obligations owed to Matthew H. Herzog represented unpaid salaries and rental, together with the proceeds of mortgages he had placed on property owned by him and *46 leased to the corporation. During 1940 Herzog Supply Co., Inc., received a poor credit rating because of the above-mentioned debt owed by it to its principal officer, Matthew H. Herzog. The poor credit rating received by the corporation during 1940 adversely affected its ability to purchase materials from its suppliers and also made it difficult to obtain bank financing. Acting upon the recommendation of its accountant, Herzog Supply Co., Inc., on July 1, 1940, issued to Matthew H. Herzog 500 shares of 5 percent noncumulative preferred stock in the total amount of $50,000. [1]
Upon the issuance of the preferred stock to Matthew H. Herzog on July 1, 1940, the $50,000 obligation owed him by the corporation was removed from its books. At the time of the issuance of the preferred stock the officers of the corporation intended to cause it subsequently to redeem all of the outstanding preferred shares at such time as it became financially able to do so. During the period July 13, 1940 to December 1, 1949, Matthew H. Herzog transferred 400 shares of the preferred stock of Herzog Supply Co. *47 , Inc., to petitioner by way of gift. On July 13, 1943, Herzog Supply Co., Inc., redeemed 80 shares of the preferred stock of Matthew H. Herzog for $8,000. On the same date the corporation redeemed 120 shares of the preferred stock held by petitioner for $12,000. On September 30, 1948, Herzog Supply Co., Inc., issued 40 shares of its preferred stock to petitioner in payment of salary owed him in the amount of $4,000. On December 1, 1948, the corporation issued 40 additional shares of its preferred stock to petitioner in payment of salary owed to him in the amount of $4,000. On December 29, 1949, Herzog Supply Co., Inc., redeemed 20 shares of the preferred stock held by Matthew H. Herzog for $2,000, and on that date it also redeemed 120 shares of the preferred stock of petitioner for $12,000. During 1955 the corporation purchased the Kingston Lumber Company for approximately $281,727.50, paying $137,977.50 cash at the time of purchase. The balance of the purchase price was paid during 1957. The outstanding loans of the corporation as of December 31, 1949 to December 31, 1959, inclusive, as shown by its notes payable account, were as follows: Year
Amount
1949 $
1950
1951
30,000
1952
1953
1954
1955
70,000
1956
90,000
1957
157,000
1958
115,921
1959
120,000
*48 On December 16, 1959, Herzog Supply Co., Inc., redeemed all the 240 shares of its preferred stock then held by petitioner for $24,000. At the time of the above-mentioned redemption petitioner was president of the corporation and owned all of its outstanding preferred stock. During 1959 the outstanding common stock of the corporation was held as follows: Robert H. Herzog
990 shares
Elizabeth W. Herzog
10 shares
The corporation paid no dividends prior to 1949. The total dividends formally declared and paid by Herzog Supply Co., Inc., for the years 1949 to 1959, inclusive, on its preferred and common stock were as follows: Year
Pfd. at 5%
Common
Total
1949
$1,900 on 380 shares
$10,000 (1,000 shares)
$11,900
1950
1,200 on 240 shares
20,000
21,200
1951
1,200
20,000
21,200
1952
1,200
20,000
21,200
1953
1,200
10,000
11,200
1954
1,200
20,000
21,200
1955
1,200
None
1,200
1956
1,200
None
1,200
1957
1,200
None
1,200
1958
1,200
15,000
16,200
1959
1,200
15,000
16,200
The net profits of the corporation for the years 1949 to 1959 inclusive were as follows: Year
Amount
1949
$48,009
1950
79,213
1951
46,945
1952
29,988
1953
42,157
1954
39,281
1955
70,430
1956
39,927
1957
32,589
1958
17,215
1959
26,076
*49 The accumulated surplus account of Herzog Supply Co., Inc., as of December 31, 1940 to December 31, 1959, inclusive, was as follows: Year
Amount
1940
$ 4,501
1941
18,575
1942
24,121
1943
29,768
1944
47,016
1945
62,056
1946
111,653
1947
184,753
1948
270,334
1949
306,442
1950
$364,242
1951
389,772
1952
401,961
1953
422,918
1954
440,956
1955
510,186
1956
548,700
1957
580,088
1958
581,104
1959
590,979
In his notice of deficiency the respondent determined that the amount distributed to petitioner by Herzog Supply Co., Inc., on December 16, 1959, in exchange for 240 shares of preferred stock represented the distribution of a dividend taxable to him as ordinary income. [2]
Ultimate Finding The amounts remaining in the corporate account of Matthew H. Herzog as of July 1, 1940, represented unused salary and rental, and was a bona fide corporate liability to him. The distribution of $24,000 by Herzog Supply Co., Inc., to petitioner on December 16, 1959, in exchange for 240 shares of its preferred stock did not constitute the distribution of a *50 dividend. Opinion Petitioners contend that the distribution by Herzog Supply Co., Inc., of $24,000 to Robert H. Herzog on December 16, 1959, in exchange for 240 shares of preferred stock constituted a redemption "not essentially equivalent to a dividend" within the meaning of section 302(b)(1) of the 1954 Code [3] and therefore qualifies as a distribution "in exchange for the stock" under section 302(a). Respondent claims that the distribution in question represents a dividend distribution to which section 301 of the Code [4] applies. The respondent makes no contention that the amounts of salary and rental credited to the account of Matthew H. Herzog, but not withdrawn, at any time represented other than a bona fide corporate liability to him. *51 In support of their position that the distribution is not essentially equivalent to a dividend, petitioners rely upon the underlying purpose of the corporation in issuing and redeeming its preferred stock, citing Keefe v. Cote, 213 F. 2d 651, and Estate of Henry A. Golwynne, 26 T.C. 1209. In Keefe v. Cote, supra, the taxpayer was majority stockholder in Cote Brothers, Inc., a corporation engaged in the operation of a bakery. The taxpayer's salary for 1936 amounted to $31,302.43. Because of a shortage of cash the corporation paid him only $6,500 in cash and issued a note for the balance of his salary in the amount of $24,802.42. The taxpayer reported tne entire $31,302.43 on his income tax return for 1936. During 1937 the officers of Cote Brothers, Inc., found that the existence on its books of the $24,802.42 note payable to its principal stockholder reflected adversely on the corporation's credit standing and it was therefore decided to issue him 248 shares of stock in exchange for the cancellation of its promissory note. On December 22, 1937, the corporation issued to the taxpayer 248 shares of its stock having a par value of $100, together *52 with $2.42 in cash, in exchange for the surrender by him of the note executed in 1936 in partial payment of his salary. It was understood that the corporation would redeem these shares when it was financially in a position to do so. On July 12, 1944, Cote Brothers, Inc., redeemed from the taxpayer the 248 shares issued to him on December 22, 1937. The Court of Appeals for the First Circuit there found that the issuance by the corporation of the 248 shares of stock served an important business purpose, viz., the improvement of its balance sheet and its credit position. It further noted that it was understood that the corporation would subsequently redeem the 248 shares when it was able to do so, and that the redemption of the shares in 1944 was simply the final step in carrying out the original purpose of the corporation to improve its credit position. The Court of Appeals accordingly affirmed the conclusion of the District Court that in view of the corporate purpose in repurchasing the shares from the taxpayer, the redemption of those shares was not essentially equivalent to the distribution of a dividend within the meaning of section 115(g) of the 1939 Code. The situation presented *53 in Estate of Henry A. Golwynne, supra, was closely parallel to the facts involved in Keefe v. Cote, supra. In the Golwynne case the decedent was the president and sole stockholder of Golwynne Chemical Corporation. Because of its lack of cash the corporation paid the decedent a portion of his salary for the years 1942 through 1945 by issuing him its promissory notes. For the purpose of strengthening its credit standing, the corporation on July 31, 1944, issued 250 shares of its $100 par value preferred stock to its president in exchange for $25,000 worth of the promissory notes previously issued to him in partial payment of his salary. On May 15, 1946, Golwynne Chemicals Corporation issued 200 shares of $100 par value preferred stock to the decedent in exchange for $20,000 worth of the notes held by him. On July 31, 1948, 200 shares of preferred stock were redeemed at par. On July 29, 1949, 75 additional shares of its stock were redeemed from the decedent at par. Golwynne Chemicals Corporation had never paid a cash dividend on either its common or preferred stock. We there held that Keefe v. Cote, supra, was controlling of the issue involved *54 and that because of the evident business purpose of the corporation, i.e., the improvement of its credit standing, the distribution was not essentially equivalent to a dividend. We are of the opinion that Keefe v. Cote, supra, and Estate of Henry A. Golwynne, supra, are dispositive of the question here presented. Herzog Supply Co., Inc., was indebted to its principal stockholder, Matthew H. Herzog, to the extent of $50,000. Because of the existence of this liability on the books of the corporation it received a poor credit rating in 1940. The poor credit rating received by the corporation in 1940 adversely affected its ability to purchase materials from its suppliers and also made it difficult for it to obtain bank financing. Solely for the purpose of improving its balance sheet and thereby strengthening its credit position, the corporation issued 500 shares of preferred stock to Matthew H. Herzog on July 1, 1940, thereby removing from its books its $50,000 obligation to him. At the time of the issuance of this preferred stock the officers of the corporation intended to cause it subsequently to redeem all of its preferred shares at such time as its financial *55 position would enable it do so. During 1948, Herzog Supply Co., Inc., issued 80 additional shares of preferred stock to petitioner in payment of salary owed him in the amount of $8,000. On July 13, 1943, Herzog Supply Co., Inc., redeemed 200 shares of its preferred stock for $20,000. Again, on December 29, 1949, the corporation took a further step toward the complete redemption of its outstanding preferred stock by purchasing 140 preferred shares from Matthew and Robert Herzog for $14,000. Finally, on December 16, 1959, the corporation completely redeemed all of its outstanding preferred stock by purchasing from petitioner the 240 shares held by him for $24,000. Under the above-described circumstances it is apparent that the total redemption by Herzog Supply Co., Inc., of all of its 580 shares of preferred stock was the final step taken in the completion of its original purpose in the issuance of those shares, as was the case in both Keefe v. Cote, supra, and Estate of Henry A. Golwynne, supra. See G. E. Nicholson, 17 T.C. 1399. The situation before us is therefore clearly distinguishable from our decision in J. Milton Sorem, 40 T.C. 206, *56 on appeal (C.A. 10, Aug. 15, 1963), in which we rejected the taxpayer's contention that the pro rata distribution of cash or its equivalent in the amount of $88,349.62 served to improve the corporation's balance sheet or otherwise to strengthen its credit position. Further, petitioners have pointed out an additional factor which has led us to conclude that the distribution in question was not intended as a dividend distribution and should not be characterized as such, viz., the corporation's record of liberal dividend payments for several years prior to the preferred stock redemption in issue, as well as during the year of redemption. Throughout the period 1949 through 1954, the total cash dividends paid by the corporation on both its outstanding common and preferred stock ranged from a minimum of $11,200 paid in 1953 to a maximum of $21,200, which was the amount paid in 1950, 1951, 1952, and 1954. Its cash dividend payment during each of the years 1958 and 1959 was $16,200. The only years during the period 1949 to 1959 in which the dividend payment made by Herzog Supply Co., Inc., was relatively low were the 3 years 1955 through 1957 during the time the corporation had a large outstanding *57 obligation arising out of the purchase in 1955 of the Kingston Lumber Company. During each of the years 1955 through 1957, the corporation paid no dividends on its common stock but paid a $1,200 dividend on its preferred stock. However, during each of the years 1958 and 1959, the dividends paid by the corporation amounted to two-thirds or more of the $24,000 distribution paid in 1959 in redemption of the 240 outstanding shares of preferred stock held by petitioner. The average dividend payment during the period 1949 to 1959 amounted to roughly one-third of the corporation's average net profit for that period. See Estate of Arthur H. Squier, 35 T.C. 950. Consequently, despite the fact that petitioner was the sole stockholder of Herzog Supply Co., Inc., [5] both before and after the redemption of 240 shares of preferred stock on December 16, 1959, and despite the accumulation of earnings and profits in an amount substantially in excess of the distribution in question, we nevertheless are of the opinion that the distribution of $24,000 to petitioner on December 16, 1959, in exchange for his 240 shares of preferred stock was not essentially equivalent to a dividend within *58 the meaning of section 302(b)(1) of the Code and must therefore be treated as a distribution in part or full payment in exchange for the stock under section 302(a). Decision will be entered for the petitioners. Footnotes
1. Prior to July 1, 1940, Herzog Supply Co., Inc., had not issued any preferred stock.↩
2. Petitioners' joint income tax return for 1959 is not contained in the record.↩
3. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. * * *
(b) Redemptions Treated as Exchanges. - (1) Redemptions Not Equivalent to Dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.↩
4. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). * * *
(c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount Constituting Dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913; or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.↩
5. In addition to the 990 common shares owned directly, petitioner owned constructively the 10 shares of the corporation's common stock held by his wife. Section 318(a)(1)(A)(i), I.R.C. 1954↩.