Presley W. Moore and Dorothy B. Moore, et al. * v. Commissioner. Moore v. Commissioner
Docket Nos. 94758-94761.
United States Tax Court
T.C. Memo 1964-20; 1964 Tax Ct. Memo LEXIS 314; 23 T.C.M. (CCH) 103; T.C.M. (RIA) 64020; January 30, 1964
Carle E. Davis, 915 Mutual Bldg., Richmond, Va., for the petitioners. Conley G. Wilkerson, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the year 1957 as follows: Docket
Defi-
Number
Petitioners
ciency
94758
Presley W. Moore and Doro-
thy B. Moore
$3,232.75
94759
Wilson C. Hewitt and Kath-
leen W. Hewitt
338.49
94760
Woodrow O. Hewitt and
Kathryn S. Hewitt
321.79
94761
John M. Moore and Jean Y.
Moore
1,213.74
$5,106.77
*315 The issue for decision is whether a cancellation of shareholder indebtedness by a corporation in redemption of a part of its outstanding stock is essentially equivalent to a dividend. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners in each case are husband and wife who filed a joint Federal income tax return for the taxable year 1957 with the district director of internal revenue at Richmond, Virginia. Presley W. and Dorothy B. Moore and John M. and Jean Y. Moore resided during the year 1957 in Verona, Virginia. Wilson C. and Kathleen W. Hewitt and Woodrow O. and Kathryn S. Hewitt resided during the year 1957 in Waynesboro, Virginia. As of January 1, 1955, Presley W. Moore, Wilson C. Hewitt, Woodrow O. Hewitt, and John M. Moore (sometimes hereinafter referred to as petitioners) were associated in a partnership known and doing business as Moore Brothers Company (hereinafter referred to as the partnership). The partnership was engaged in the construction business. On January 1, 1955, Hewitt Company, Inc., a Virginia corporation (hereinafter sometimes referred to as the corporation) issued 12,120 shares of voting stock, *316 with a par value of $10 a share, to the partners of the partnership in exchange for partnership assets. This stock is the only stock which has been issued by the corporation. The 12,120 shares of stock of the corporation were issued to each of the partners of the partnership in the same ratio as each partner's interest in the partnership. The partner's percentage interest in the partnership and the number of shares of the corporate stock each received are as follows: Percent of
No. of shares
interest
of corpora-
in part-
tion stock
Partner
nership
received
Presley W. Moore
50
6,060
John M. Moore
30
3,636
Woodrow O. Hewitt
10
1,212
Wilson C. Hewitt
10
1,212
100
12,120
After the transfer of its assets to the corporation, the partnership continued in business only to complete construction contracts then held by the partnership. The contracts were completed in the early part of 1956. At approximately the same time as Hewitt Company, Inc. was organized, petitioners organized another corporation, Moore Brothers, Incorporated (hereinafter referred to as Moore). Moore engaged in a construction business similar to that of the partnership *317 and any new construction work which petitioners obtained was obtained for and done under contracts entered into by Moore. Hewitt Company, Inc. did not engage in construction work directly, but rented construction equipment it owned both to the partnership, enabling the partnership to complete the contracts it had under way when Hewitt Company, Inc., was created, and to Moore, enabling Moore to proceed on new contracts it had entered into. The rental charged by Hewitt Company, Inc., to the partnership for the use of equipment was at a rate determined by a manual published by the American Associated Equipment Distributors. Upon completion of its contracts, in early 1956, the partnership was indebted both to the corporation in the amount of $15,562.85, representing the balance due for the rental of the corporation's equipment, and to the Augusta National Bank in the approximate amount of $43,000, which represented a loan for working capital. In early 1956 it became necessary for the two corporations, Hewitt Company, Inc., and Moore, to obtain new credit to provide for new equipment and working capital. The performance of one contract necessitated the purchase by Hewitt Company, *318 Inc. of an asphalt plant at a cost of approximately $150,000. In order to obtain financing from the First & Merchants National Bank, Richmond, Virginia, petitioners pledged their homes as security and furnished detailed financial statements of both corporations, the partnership, and each individual petitioner. The bank representatives were critical of the two outstanding debts of the partnership. These representatives of the bank indicated that if these indebtednesses were not paid the bank might at some future time turn down requests for financial assistance either to petitioners or to their corporations. A bonding company which indemnified parties contracting with Moore was insistent that the partnership obligations to Hewitt Company, Inc., and to the Augusta National Bank be satisfied. Petitioners' bookkeeper who was also the bookkeeper for the corporation, repeatedly requested petitioners to get their partnership debts with the corporation and the bank straightened out. Following the recommendations of their attorney, petitioners satisfied the $43,000 debt to Augusta National Bank by transferring that obligation from the partnership to Moore. In return for its assumption by *319 Moore, each of the partners gave Moore a note for his proportionate share of the debt. Petitioners' original intention was to pay off these notes as they considered that they had available cash to do so. Further following the recommendation of their attorney, petitioners had the corporation redeem 1,550 shares of its stock in cancellation of the indebtedness owed by the partnership to it. After these transactions had occurred, the bank and the bonding company were still not satisfied because of the obligations appearing on the partners' individual financial statements as a result of their notes to Moore. Petitioners Presley W. Moore and John M. Moore then transferred a tract of land worth $45,000 or more in which each owned a 50 percent interest to Moore in satisfaction of the debt. The other two partners, Wilson C. Hewitt and Woodrow O. Hewitt, gave John M. Moore, who owned only a 30 percent interest in the partnership, notes representing their portion of the indebtedness, 10 percent each. In effecting the stock redemption, the partners contributed the stock redeemed in proportion to their respective capital interests in the partnership which was the same as their respective percentage *320 of stock ownership in the corporation. The redemption was recorded on the partnership's books as a reduction of accounts payable of $15,500 and offsetting investment contributions pro rata for the various partners totaling $15,500. On the corporation's books the redemption was recorded as a pro rata capital reduction for the shareholders, totalling $15,500 and an offsetting credit to accounts receivable. The number of shares surrendered, the amount each partner's partnership interest was increased, and the amount each partner's capital stock account in the corporation was reduced, are as follows: Amount of
partnership
investment in-
No. of
crease and corre-
shares
sponding corpo-
surren-
ration invest-
Partner
dered
ment decrease
Presley W. Moore
775
$ 7,750
John M. Moore
465
4,650
Woodrow O. Hewitt
155
1,550
Wilson C. Hewitt
155
1,550
1,550
$15,500
At the time of the redemption of the 1,550 shares of stock on January 15, 1957, the corporation had earnings and profits in excess of $15,500. The corporation had not, prior to January 15, 1957, paid any dividends to its stockholders. Since its incorporation, the business *321 of the corporation has been both profitable and expansive. Although the stock redemption took the form of a transfer of stock from the individual partners to the partnership and then by the partnership to the corporation, there was no delivery or transfer to the partnership as the stock certificates were always in the possession of the corporation, and the transfer was actually made by appropriate entries in the books of the corporation. Petitioners did not report any gain or lois on the redemption of their stock for the year 1957. Respondent increased the taxable income of petitioners in each case for the year 1957 as follows: Dwt.
Amount of
No
Petitioners
Increase
$ 1758
Presley W. Moore and Doro-
thy B. Moore
$7,750
$ 1759
Wilson C. Hewitt and Kathleen
W. Hewitt
4,650
[1760
Woodrow O. Hewitt and Kath-
ryn S. Hewitt
1,550
$ 1761
John M. Moore and Jean Y.
Moore
1,550
Respondent's explanation in each case for his determined deficiency was that "the redemption of * * * shares of stock, par value $10.00 of Hewitt Company, Inc. on January 15, 1957, constitutes taxable dividends." Opinion The issue in this case is whether the *322 redemption of stock here involved qualifies under section 302 of the Internal Revenue Code of 1954[1] to be treated as a payment in exchange for the stock. If this transaction is to qualify under section 302, it must do so under section 302(b)(1) as a redemption which is not essentially equivalent to a dividend, as none of the other provisions of section 302(b) apply. If the redemption here involved is essentially equivalent to a dividend, the amount credited to each petitioner in cancellation of the partnership's indebtedness is taxable to such petitioner as a dividend under section 301. The redemption in this case took the form of a cancellation of indebtedness owed by a partnership, of which petitioners were the partners, to the corporation. The indebtedness arose from amounts due to the corporation from the partnership for machinery rentals for machinery used by the partnership in conducting its construction business. The proportionate interest of the partners in the partnership was identical with their proportionate stock interests in the corporation. The *323 partnership's indebtedness to the corporation was cancelled when each of the shareholders surrendered stock to the corporation representing his proportionate share of the partnership and thus of the partnership's indebtedness. Whether a redemption of stock is essentially equivalent to a dividend depends on the facts and circumstances of each particular case. Ferro v. Commissioner, 242 F. 2d 838 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court, and cases cited therein. Among the criteria used by the courts in determining the ultimate fact are whether: (1) There was a contraction in the corporate business; (2) the initiative for the corporate distribution came from the corporation or the shareholders; (3) there was a change in the proportionate ownership of stock by the shareholders; (4) there were prior dividends and, if so, the amounts, frequency and significance thereof; (5) there was a sufficient accumulation of earned surplus to cover the distribution; (6) there was a bona fide corporate business purpose for the distribution. Thomas Kerr, 38 T.C. 723, 730 (1962), on appeal (C.A. 9, Nov. 26, 1962); and Genevra Heman, 32 T.C. 479 (1959), *324 affd. 283 F. 2d 227 (C.A. 8, 1960). From the record in this case we conclude that the redemption was essentially equivalent to a dividend. There was no contraction of the corporate business but rather an expansion thereof. In its 2 years of existence, at the time of the redemption, the corporation had not paid a dividend, and it had earnings and profits in excess of the amount distributed by way of debt cancellation. The most indicative factor pointing towards dividend equivalence is that the redemption of the stock was exactly pro rata among the shareholders thus leaving their proportionate interests unchanged. In Bradbury v. Commissioner, 298 F. 2d 111 (C.A. 1, 1962), affirming a Memorandum Opinion of this Court, the Court stated: The extent to which the distribution is ratably shared by the stockholders has always been one of the most conspicuous determinants of dividend equivalence. Petitioners argue that there was a bona fide corporate business purpose for the redemption and that this purpose qualifies the redemption under section 302(b)(1) as not essentially equivalent to a dividend. Petitioners' position is that the stock redemption was part *325 of an overall plan whereby two partnership debts were paid off by the partners, that these debt payments were made at the insistence of a bank and a bonding company, and that through this debt satisfaction the corporation was able to maintain a line of credit with a bank. It is not every business purpose that will suffice to cause the distribution to be treated as not essentially equivalent to a dividend. A business purpose is but one factor to be considered. Bradbury v. Commissioner, supra, and Thomas Kerr, supra, and the cases cited therein at page 732. Even according to the testimony of one of the petitioners, the threat of the bank's failing to extend credit to the corporation was not immediate and not altogether certain.[2] Representatives of the bank did not testify. Furthermore, it is hard to understand how the cancellation of a debt owed to the corporation improves the corporation's financial picture. Cf. J. Natwick, 36 B.T.A. 866 (1937). *326 Even were we to assume that the satisfaction of the indebtedness due the corporation was mandatory as concerns the corporation's ability to secure future bank loans, there still appears to be no valid business purpose for effecting the debt cancellation in the manner it was done in this case. In evaluating a business purpose, it is relevant to look at alternative steps available to the corporation. Neff v. United States, 305 F. 2d 455 (Ct. of Claims, 1962); Ballenger v. United States, 301 F. 2d 192 (C.A. 4, 1961); Bradbury v. Commissioner, supra, and Estate of Charles Chandler, 22 T.C. 1158 (1954) affd. per curiam 228 F. 2d 909 (C.A. 6, 1955). It does not appear that the bank suggested or advocated that the debt cancellation be made by way of reduction in capital, i.e. a redemption of stock, Cf. Harry A. Koch, 26 B.T.A. 1025 (1932), Bona Allen, Jr., 41 B.T.A. 206 (1940), and J. Natwick, supra.The normal manner for clearing the indebtedness would have been for the corporation to declare a dividend in the amount of the indebtedness and offset the dividend against the debt due. *327 Cf. Estate of Charles D. Chandler, supra. The more circuitous route taken by the corporation in this case of redeeming stock, as opposed to the declaration of a dividend, served no corporate purpose but rather, a shareholder purpose. Cf. Neff v. United States, supra, Ballenger v. United States, supra, and Bradbury v. Commissioner, supra. In the Chandler case the corporation redeemed half of its outstanding stock in order to eliminate an excessive amount of cash which it held. We there stated: An examination of the facts reveals that the Company had a large earned surplus and an unnecessary accumulation of cash from the standpoint of business requirement, both of which could have been reduced to the extent of earnings and profits by the declaration of a true dividend. The only suggested benefit accruing to the business by the distribution in cancellation of half the stock was the climination of a substantial amount of this excess cash. Ordinarily such cash would be disposed of by the payment of a dividend. Coupled with the fact that the stockholders' proportionate interests in the enterprise remained unchanged, these factors indicate that *328 section 115(g) is applicable. * * * In Ballenger v. United States, supra, the corporation redeemed all the preferred stock held by its sole shareholder. Taxpayer argued that there was a business purpose for the stock redemption because (1) it relieved the corporation of a duty to pay 5 percent dividends thereon which were cumulative, (2) the bonding company considered the cumulative preferred stock to be objectionable, and (3) the corporation could borrow outside funds for less than 5 percent and also get a tax deduction for interest paid under section 163. The Court, however, pointed out that these ends could have been attained without effecting a distribution of corporate earnings and profits by the expedient of the taxpayer exchanging his preferred stock for new common stock of the corporation. The Court stated that in the case of a pro rata redemption of stock, any business justification must be compelling to justify treating the redmption as not essentially equal to a dividend. In Neff v. United States, supra, the taxpayer argued the redemption of part of his stock had a business purpose because it enabled the corporation to resell the stock at a *329 substantial profit, thus securing for the corporation much needed additional funds. The Court pointed out that the corporation at the time it redeemed the taxpayer's stock, held unissued stock which it could have sold to outsiders to raise the needed extra funds. In Bradbury v. Commissioner, supra, the principal shareholder was indebted to her corporation. The Court of Appeals stated in part as follows: In a proper case, the presence of a legitimate corporate business purpose may well be relevant as an offsetting factor to a determination of dividend equivalence. However, we believe that for business purpose to be of really meaningful import the dichotomy between shareholder and corporation must be more sharply drawn than is the case here. * * * The record indicates that petitioner as the dominant stockholder of the Bradbury Corporation incurred the $22,000 debit balance with the corporation as a result of withdrawing money to meet her personal expenses. Had she initially redeemed her stock to obtain this money the transaction would undoubtedly be treated as a dividend. The only real distinction between such a case and the instant transaction is that it is now asserted *330 that the bank's request that the indebtedness be eliminated furnishes a corporate business purpose. However, in substance there is no material distinction between the two situations; in each the redemption can be ultimately traced to the fact that the stockholder obtained an economic benefit from the corporation in satisfaction of her personal needs. No argument is made that the petitioners herein did not receive a pro rata economic benefit equal to the amount of the debt when the partnership debt to the corporation was cancelled. The indebtedness represented an expense that, except for the cancellation, would have had to have been paid by the partnership. Had the corporation permitted the partnership to use its equipment without charge in the first instance, the value of such use would clearly constitute a dividend to the stockholder partners. There is no suggestion that the partners, who were the debtors, were insolvent before the debt cancellation. Petitioners seek to distinguish redemption cases involving debt cancellations, such as Bradbury v. Commissioner, supra, on the ground that in these cases the indebtedness arose through the personal needs of the shareholders *331 who would borrow corporate funds whereas in the present case the indebtedness arose as an adjunct to the business carried on by the partnership. The cause for the indebtedness to the corporation is not important. What is important is the economic benefit conferred on the shareholders when the corporation cancels the indebtedness. Among the cases relied on by petitioners are Jones v. Griffin, 216 F. 2d 885 (C.A. 10, 1954), Keefe v. Cote, 213 F. 2d 651 (C.A. 1, 1954), and Estate of Henry A. Golwynne, 26 T.C. 1209 (1956). Each of these cases is distinguishable on the facts from the instant case. In Jones v. Griffin, supra, the redemption was substantially disproportionate. In addition, the Court pointed out that the creditors bank insisted that preferred stock be redeemed because the preferred stock would constitute a prior claim on income should the bank extend credit to the corporation. Also, by substituting a bank loan for the outstanding preferred stock, the corporation was able to reduce its costs for borrowed funds by more than 50 percent. Keefe v. Cote, supra, and Estate of Henry A. Golwynne, supra, *332 involved situations where shareholder officers received part of their salary in the form of promissory notes because the corporation was short of funds; the notes, in turn, were exchanged for stock in order to improve the financial condition of the corporation; and the stock was subsequently redeemed, which event was anticipated from the start. The courts emphasized the facts that both the issuance of the notes and their exchange for stock were motivated by valid corporate reasons, and that because the taxpayers had reported the promissory notes as taxable income on receipt there was no tax avoidance purpose, and that actually to treat the subsequent redemption as a dividend would have the effect of taxing the same income twice. [3]
*333 The evidence in the instant case fails to establish that the redemption of petitioners' stock was not essentially equivalent to a dividend. Decision will be entered for respondent. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Wilson C. Hewitt and Kathleen W. Hewitt, Docket No. 94759; Woodrow O. Hewitt and Kathryn S. Hewitt, Docket No. 94760; and John M. Moore and Jean Y. Moore, Docket No. 94761.↩
1. All references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Petitioner John M. Moore testified as follows: Q. In discussing financing with the various banks, did any of the banks ever suggest to you a specific way in which you should attempt to get your accounts payable off of your books? A. No, sir; I don't think so. I think they just insisted that we get these outstanding debts cleared up because it marred our financial picture to such an extent that they were reluctant to hand us the necessary cash. Q. Did they indicate they would not let you have it if you did not - A. They indicated to the extent that if we kept coming back to them time after time after time and still have this obligation on our financial statement that they would certainly, in time, turn us down. Q. Then you feel that they indicated to you or gave you the impression that it would be necessary to get this off the books in order to make future financing. A. Yes. Q. You don't know how much more they would have allowed you? A. No, sir, I don't.↩
3. There are not in evidence any of the partnership returns even though the Court at one point suggested that these returns might be helpful in understanding this case. None of the returns of the corporation is in evidence and the returns of the petitioners for 1955 and 1956 are not in evidence. The record does not show the amount of income, if any, of the partnership in 1955 or whether that income was reported on the cash or an accrual basis of accounting. It is obvious that if the partnership reported on an accrual basis and had income for 1955, the partnership income for 1955 was less by the amount of $15,500 if the total unpaid rent applied to that year than it would have been if the rentals due to the corporation had been paid. Under these circumstances petitioners would have once received a benefit from this indebtedness by a direct reduction of their pro rata share of distributable partnership income for 1955. If the partnership reported on a cash basis, no similar reduction of its income would have occurred and it is possible that some elements of double taxation might exist, particularly if the corporation were on an accrual basis and the $15,500 of accrued rents had been included in its income in computing its accumulated earnings. Since petitioners have the burden of proof and have failed to show these facts, we assume that such facts would show that the partnership, and thus petitioners, have once obtained the advantage of a reduction in income by the creation of the indebtedness for equipment rentals.↩