JOE L. SMITH, JR., AND NANCY R. SMITH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1502–66.    Filed February 14, 1968.

*Robert B. Yorty*, for the petitioners.
*Robert A. Roberts*, for the respondent.

OPINION

Petitioner contends that the distribution of the debentures by Smith, Inc., to him in exchange for 800 shares of the corporation's common stock constituted a redemption "not essentially equivalent to a divi-

dend" within the meaning of section 302(b)(1) and therefore qualified as a distribution "in exchange for the stock" under section 302(a). The question whether a distribution is essentially equivalent to a dividend turns upon the facts and circumstances of each case. *Kerr* v. *Commissioner*, 326 F. 2d 225 (C.A. 9, 1964), affirming 38 T.C. 723 (1962).

In resolving this factual question of dividend equivalence, the courts have developed the following criteria: Was there a bona fide corporate business purpose for the distribution; did the corporation adopt any plan of business contraction or did the transaction actually result in a contraction of the corporate business; was the distribution initiated by the stockholder or by the corporation; was the proportionate ownership of stock by the stockholders changed; what were the amounts, frequency, and significance of dividends in the past; and was there a sufficient accumulation of earned surplus to cover the distribution or was it partly from capital? *Kerr* v. *Commissioner*, *supra; Genevra Heman*, 32 T.C. 479 (1959), affd. 283 F. 2d 227 (C.A. 8, 1960).

Petitioner's position is that where both the issue and redemption of stock are dictated by reasons associated with a legitimate corporate business purpose, there being no indication of a tax evasion scheme or a corporate dividend policy evidencing a pattern of tax avoidance, then the redemption of such stock is not essentially equivalent to a dividend. Petitioner cites *Keefe* v. *Cote*, 213 F. 2d 651 (C.A. 1, 1954), and *Estate of Henry A. Golwynne*, 26 T.C. 1209 (1956), in support of this general proposition.

In *Keefe* v. *Cote*, *supra*, the taxpayer was the majority stockholder and an executive officer of a corporation which in 1936, because of a cash shortage, paid taxpayer only a portion of his annual salary in cash and issued a note to him for the balance. During 1937 the corporate officers found that the presence on the corporation's books of the note payable to the principal officer and stockholder reflected adversely on the corporation's credit standing and it was therefore decided to issue him 248 shares of stock in exchange for the cancellation of the promissory note. It was understood that the corporation would redeem these shares when it could do so conveniently. In 1944 the corporation redeemed from the taxpayer the 248 shares issued to him in 1937.

The Court of Appeals for the First Circuit concluded that the 248 shares were originally issued to serve the important corporate purpose of improving its balance sheet and credit position and that the subsequent redemption of these shares was merely the final step in carrying out the original corporate purpose. Accordingly, the appellate court held that the redemption of the stock was not essentially equivalent to a dividend within the meaning of section 115(g) of the 1939 Internal Revenue Code.

In *Estate of Henry A. Golwynne*, *supra*, the factual situation was similar to that in *Keefe* v. *Cote*, *supra*. The decedent was president and

sole stockholder of a corporation which, because of its lack of cash, paid the decedent a portion of his salary for the years 1942 through 1945 by issuing him its promissory notes. In order to improve its credit standing, the corporation in 1944 and in 1946 issued a total of 450 shares of preferred stock to decedent in exchange for promissory notes held by him. In 1948 the corporation redeemed 200 shares of the preferred stock and in 1949 an additional 75 shares of such preferred stock were redeemed. This Court held that *Keefe* v. *Cote, supra,* was controlling and that because the issuance as well as the redemption of the preferred stock was part of the evident corporate purpose of strengthening the corporation's credit position, the redemption of the stock was not essentially equivalent to a dividend within the meaning of section 115 (g) of the 1939 Internal Revenue Code.

We believe that *Keefe* v. *Cote, supra,* and *Estate of Henry A. Golwynne, supra,* are controlling here. Actually respondent bases his whole case on the contention that the loan was to petitioner individually and at no time a corporate obligation. We are convinced from all the evidence that the McCulloch loan of $40,000 in 1953 was made to Smith, Inc., and not to the petitioner individually. McCulloch's check in that amount was made payable to the corporation, it was endorsed by petitioner as president of the corporation, the loan was recorded on the corporate books as a note payable to McCulloch, and in May 1953 the corporation prepaid a year's interest on the loan.

In connection with a pending application by Smith, Inc., for a permit to construct a VHF television station in Beckley, W. Va., the Federal Communications Commission in a letter to the corporation in April 1954 raised questions concerning the corporation's financial qualifications to construct and operate the proposed television station. The Commission pointed out that the corporation's balance sheet as of October 31, 1953, showed a "negative net current position of $180,668" which threw doubt on the corporation's ability to finance any portion of the proposed station from existing capital.

To remedy this situation Smith, Inc., took several steps which included (1) the issuance of additional shares of its common stock to petitioner and to other members of his family; (2) the assumption by petitioner of the $40,000 corporate obligation to McCulloch in exchange for stock; and (3) the shifting of certain other corporate obligations from current to long-term liabilities on the corporate balance sheet. Petitioner testified that when the $40,000 corporate obligation was assumed by him there was never any intention that he would ever pay the obligation. Instead, it was understood that the corporation itself would repay McCulloch after the Charleston television station, which had begun operations in September 1953, became a successful operation. In other words, the assumption by petitioner of the obligation was

never intended to be anything but a temporary measure undertaken to improve the corporation's financial statements.

However, the Charleston television station proved unsuccessful and it was closed down in February 1955. Smith, Inc., incurred heavy operating losses during the period 1955 through 1959 and it was not until 1961, after Smith, Inc., had acquired a profitable printing firm, that it was felt that the McCulloch obligation could be restored to the corporation and that arrangements should be made to repay McCulloch. Accordingly, the following steps were taken on or about February 1, 1961: (1) Smith, Inc., issued $40,000 in debentures to petitioner in exchange for 800 shares of its common stock; (2) petitioner delivered his personal check for $40,000 to McCulloch in exchange for petitioner's promissory note dated July 1, 1953, in the amount of $40,000; and (3) petitioner transferred the corporate debentures in the face amount of $40,000 to McCulloch in exchange for McCulloch's personal check in the amount of $40,000.

The only effect of these transactions, which must be viewed together, was to restore to Smith, Inc., the $40,000 obligation it owed to McCulloch prior to the time when petitioner assumed such obligation in 1954. The redemption of petitioner's stock merely was the final step taken in the completion of the corporation's original purpose in the issuance of such shares. Petitioner did not enjoy any monetary or other economic benefit as a result of these transactions.

It should also be noted that petitioner, at about the same time that the corporation redeemed 800 shares of stock from him, acquired more than that number of Smith, Inc., shares of stock from various sources, so that his stock interest in the corporation was not diminished by the redemption and, in fact, was increased.

We hold, under the particular circumstances of this case, that the redemption of stock from petitioner in 1961 was not essentially equivalent to a dividend within the meaning of section 302(b)(1).

*Decision will be entered under Rule 50.*